**KESSLER INSTITUTE FOR REHABILITATION, Petitioner,**

**v.**

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 81–1638.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Rule 12(6) Nov. 30, 1981.

Decided Jan. 25, 1982.

Peter A. Somers, Donald F. Nicolai, Lindabury, McCormick & Estabrook, A Professional Corp., Westfield, N. J., for petitioner.

John D. Burgoyne, Asst. Gen. Counsel, Robert W. Smith, William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B., Washington, D. C., for respondent.

Before ALDISERT, ROSENN and WEIS, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

■ The Rules of the National Labor Relations Board, like those of the federal courts, grant an automatic three-day enlargement of time for filing responses to notices or other pleadings served by mail. Finding the language of the NLRB rules ambiguous, we construe them to require that the last day of the original period must be fixed before the three-day extension is added to determine the expiration date. Because the Board adopted a more restrictive interpretation and refused to accept exceptions that were timely filed, we grant this petition for review and remand.

After several years of litigation in a consolidated representation and unfair labor practices case, the Board ordered a reopening of the matter for further findings by a hearing officer. His report was filed on December 26, 1979, and the employer filed exceptions on January 10, 1980. The Board found the exceptions to be untimely, accepted the recommendations of the hearing officer, and ultimately issued a bargaining order.

The controversy arises from the efforts of the Jersey Nurses Economic Security Organization of the New Jersey State Nurses Association to represent the nurses employed by the Kessler Institute for Rehabilitation. A petition for election was filed on November 8, 1977, and balloting took place on January 27, 1978. The employer has insisted from the start that the Association is not a bona fide labor organization because the Board of Directors of its parent entity includes statutory supervisors. Board proceedings began before the election and have continued to the present time.

Because the dispositive issue in this case is procedural, it is not necessary to review any substantive matters. For present purposes, the scenario begins on August 21, 1979, when the Board referred the case to the hearing officer for a supplemental report. The order also provided that "within 10 days from the date of issuance of such report, either party may file with the Board in Washington, D.C., eight copies of exceptions thereto...." The hearing officer mailed his report on December 26, 1979, reiterating the Board's directive that exceptions should be filed "within 10 days from the date of issuance of this report." Kessler's counsel received it on December 28, 1979.

The tenth day fell on Saturday, January 5, 1980. On Tuesday, January 8, the employer mailed its exceptions to the Board in Washington, D.C. where they were received on Thursday, January 10, 1980. On the following day, the Board's Associate Executive Secretary wrote to the employer's counsel stating that the exceptions were late and would not be "entertained by the Board." On February 4, 1980, the Board rejected the employer's appeal to permit filing of the exceptions, and on September 15, 1980 issued a pro forma order adopting the recommendations of the hearing officer. In the order the Board noted that "no timely exceptions to the hearing officer's report were filed by either party...."

Some months later, the Board issued its final decision and order granting General Counsel's motion for summary judgment, and the case became ripe for appeal to this court. Kessler petitioned for review, contending that its exceptions had been timely filed. In the alternative, the employer urges that we address the substantive issues at this time because it is unlikely that the Board will rule favorably on remand. The Board cross-petitioned for enforcement and argues that if we rule against it on the

procedural question, the case should be returned to it for a decision on the merits in light of the exceptions.

We first discuss the procedural issue. Although the Board's Associate Executive Secretary initially cited inapplicable rules as authority for his action, there is now agreement as to the appropriate provisions. The controversy has thus been reduced to a narrow one—the construction of the rule providing for the automatic three-day extension of time for mailing.

The applicable Board regulation is found at 29 C.F.R. § 102.114, and provides in pertinent part:

"(a) In computing any period of time prescribed or allowed by these rules, the day . . . after which the designated period of time begins to run, is not to be included. The last day of the period so computed is to be included, unless it is a Sunday or a legal holiday, in which event the period runs until the end of the next day, which is neither a Sunday nor a legal holiday. When the period of time prescribed or allowed is less than 7 days, intermediate Sundays and holidays shall be excluded in the computation. . . . A Saturday . . . shall be considered as a holiday. . . . Whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after service of a notice . . . and the notice or paper is served upon him by mail, 3 days shall be added to the prescribed period. . . ."

The parties advance differing interpretations of this rule. Under the Board's reading, the extension date is determined by adding three days to the number constituting the initial period. According to the Board's formula, 13 days (10 plus 3), was the time within which the exceptions had to

be filed, so that the final day was Tuesday, January 8.

The employer, however, adopts a different approach. Since the original time period ended on Saturday, January 5, the holiday provision in the rule must then be computed so that the "prescribed period" of 10 days did not expire until Monday, January 7. It is at that point, says the employer, that "3 days shall be added to the prescribed period," which makes the last day Thursday, January 10, the date the exceptions were received by the Board.

■ Both interpretations are reasonable, and neither has controlling precedent to support it.[1] In most circumstances we would generally be inclined to accept an administrative agency's interpretation of its own regulation. *United States v. Larionoff,* 431 U.S. 864, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977). *The Budd Co. v. Occupational Safety & Health Review Commission,* 513 F.2d 201 (3d Cir. 1975). In this instance, however, we are not justified in subordinating our judgment to that of the administrative agency. The language of the Board's rule here is almost identical to that in Fed.R.Civ.P. 6(a), (e), Fed.R.Crim.P. 45(a), (e), and Fed.R.App.P. 26(c).[2] Because of this, our decision here will affect the interpretation of those rules in cases outside the Board's jurisdiction. In addition, this is an instance where the issue is purely one of law, and there is no overlay of administrative expertise. Deference to agency interpretation is not warranted in these circumstances. *See Hi-Craft Clothing v. NLRB,* 660 F.2d 910 (3d Cir. 1981).

The Board's construction of the rule does have the virtue of simplicity, and it is supported by the decisions of two state courts which interpreted similar language. *Wheat*

---

1. Our research does not disclose any federal appellate decision on point.

2. Fed.R.Civ.P. 6(e) states:

"Whenever a party has the right or is required to do some act or take some proceeding within a prescribed period after the service of a notice or other paper upon him and the notice or paper is served upon him by

mail, 3 days shall be added to the prescribed period."

Rule 45(e), Fed.R.Crim.P. 45(e), is identical. Fed.R.App.P. 26(c) reads:

"Whenever a party is required or permitted to do an act within a prescribed period after service of a paper upon him and the paper is served by mail, 3 days shall be added to the prescribed period."

*State Telephone Co. v. State Corporation Commission*, 195 Kan. 268, 403 P.2d 1019 (1965); *In re Iofredo's Estate*, 241 Minn. 335, 63 N.W.2d 19 (1954). We do not find those cases persuasive, however, for they do not adequately consider the purpose of the rule or the practical effect of the construction they adopt.

Essentially, the rule recognizes that the time granted for responding to a specific matter must be enlarged when the document is transmitted by mail. Without such an allowance, a party would be penalized by being allotted less time to complete his task merely because his adversary chose to use the mail. In the interest of fairness, the number of working days assigned to each litigant should be the same insofar as that is possible.

An important aspect of the rule is the emphasis upon working days. When the time period would expire on a week-end or holiday, there is an extension to the next regular business day. Similarly, when the period is for less than seven days, intermediate Saturdays and Sundays are excluded from the computation. Consequently, liberality in favor of the responding party is evident in the text of the rule and is also appropriate in its construction.[3]

■ One other factor counsels liberality. We take judicial notice of the delays in the postal system which have been increasing over the years.[4] At one time, for example, mail from Newark to Westfield, New Jersey would be expected to take only one day. Such dispatch is so rare today that the Postal Service charges premium rates for the overnight service it calls Express Mail. A realistic construction of the rule's language cannot ignore the slow pace of the postal service.

The Board's restrictive construction of the rule did not give respondents the full benefit of the mail delay provision. If the hearing officer's report had been delivered to respondents on December 26, the basic ten-day period would have expired on Monday, January 7. Applying the Board's interpretation of the mail extension, January 8 is the last day for timely filing, which is only one working day beyond the original ten-day deadline. The frustration of the rule's purpose is evident here—although actual available time for response was shortened by two days as a result of the Board's use of the mail, as compensation the respondent was allotted only one additional day.

Analysis of the rule's text and purpose leads to the conclusion that the proper interpretation is the one advanced by respondent. The expiration date for the "prescribed period" must first be fixed, with due allowance for the holiday and week-end extension. Only then should the three-day mail extension be added. The time allotment should not be dependent upon the fortuity of the day of the week when the adversary mailed the document requiring an answer. In this case therefore the proper filing date was January 10, 1980, and the Board erred in refusing to accept the exceptions.

■ Although the employer would have us meet the merits at this time, we must decline the invitation. It is unfortunate that this case has gone so long unresolved, and it is ironic that the Board would choose to impose a restrictive interpretation on the proper filing date in this case. To our knowledge there has been no dilatory conduct on the part of the employer in this prolonged litigation. The agency's wooden and inflexible attitude on procedural matters which we found unfortunate in *Livingston Powdered Metal, Inc. v. NLRB*, 669 F.2d 133 (3d Cir. 1982) has again resulted in lengthy delays in final disposition of a case.[5]

---

3. The Board's regulations take a similar approach. 26 C.F.R. § 102.121 states that "the rules and regulations in this part shall be liberally construed to effectuate the purposes and provisions of the act ..."

4. In this court, for example, postal delays so hindered the expeditious work of the judges that a sophisticated electronic mail system has been installed.

5. Although petitioner's exceptions were refused by the Board on January 10, 1980, it was not

Although we appreciate the desire of the Kessler Institute and the Nurses Association for an end to this litigation, we are not free to circumvent the Board's jurisdiction to make the initial determination on the merits. In *South Prairie Construction Co. v. Local 627*, 425 U.S. 800, 96 S.Ct. 1842, 48 L.Ed.2d 382 (1976), the Supreme Court made it clear that it is "incompatible with the orderly function of the process of judicial review" for a court of appeals to take upon itself the original resolution of an issue entrusted to an administrative agency. *Id.* at 805, 96 S.Ct. at 1844, *quoting NLRB v. Metropolitan Insurance Co.*, 380 U.S. 438, 444, 85 S.Ct. 1061, 1064, 13 L.Ed.2d 951 (1965).

Nor are we convinced that further proceedings before the Board will be futile. Indeed, it appears that much of the delay in this case resulted from the Board's decision in *Sierra Vista Hospital, Inc.*, 241 N.L.R.B. No. 107 (1979), an apparent modification of earlier policy. We cannot say what decision the Board may reach now after full consideration of respondent's exceptions.

Accordingly, the petition for review will be granted and the case remanded to the Board for further proceedings consistent with this opinion. The petition for enforcement will be denied.

until September 15, 1980 that the Board issued its pro forma order. That eight-month interval would have been adequate for careful consideration of the exceptions. We note also that in the proceedings before this court, the Board itself was arguably late in filing its brief. However, a liberal interpretation of the rules applied by our Clerk—and one which we approve—prevented the imposition of sanctions on the Board. Basic fairness dictates that an agency seeking accommodation from us should extend similar consideration to those who appear before it.

In his thoughtful book, Dean Freedman writes, "For many Americans, the administrative agencies give all too much evidence of what Harold Laski described as the signifying characteristics of bureaucracy—'a passion for routine in administration, the sacrifice of flexibility to rule, delay in the making of decisions and a refusal to embark upon experiment.'" J. Freedman, Crisis and Legitimacy 37 (1978).