PEABODY COAL COMPANY, Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

No. 82–7422.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 14, 1983.

Decided June 28, 1983.

Harold I. Elbert, St. Louis, Mo., for petitioner.

John D. Burgoyne, Atty., N.L.R.B., Washington, D.C., for respondent.

Before WRIGHT, CANBY and BOO-CHEVER, Circuit Judges.

CANBY, Circuit Judge:

Peabody Coal Co. ("Peabody") petitions for review of an order of the National Labor Relations Board ("NLRB") granting the General Counsel's motion for summary judgment. The NLRB cross-petitions for enforcement. Peabody argues that its refusal to bargain with the United Mine Workers of America ("UMWA") did not violate 29 U.S.C. § 158(a)(5) and (1) because the UMWA was contractually barred from representing the employees in question. It also argues that the NLRB erred in rejecting its request for review of the Regional Director's supplemental decision of November 12, 1981 as untimely. We agree with the latter contention but not the former.

### Refusal to bargain

The UMWA filed a representation petition seeking recognition as the exclusive bargaining representative of certain workers employed at three of Peabody's warehouses. Peabody opposed the petition, arguing that the UMWA had previously agreed not to represent the employees in question.

Peabody contended that the UMWA's agreement not to represent warehouse employees was contained in the 1981 Western Surface Agreement ("1981 Agreement") which covered certain other Peabody employees. The Regional Director found that the UMWA was not barred from representing the warehouse workers and ordered an election. An election was held on October 2, 1981, and the UMWA was chosen as the employees' bargaining representative.

The 1981 Western Surface Agreement does not explicitly bar the UMWA from representing warehouse employees. It simply provides that "watchmen, clerks, engineering and technical forces of the Employer working at or from a district or local mine office, are exempt from this agreement." The parties apparently agree that the warehouse employees are clerks as that term is used in the quoted language. Peabody also relies on a memorandum of understanding which states: "The parties have agreed that agricultural and warehouse employees will not perform classified work."

Peabody argues that the quoted passages were intended to exclude warehouse workers not only from the contract's coverage but from the union's jurisdiction as well. It notes that the memorandum bars warehouse employees from performing classified work and that the definition of classified work is found in Article II of the 1981 Agreement which is entitled "Work Jurisdiction." Moreover, Article II explicitly exempts warehouse clerks from its coverage.

■ The NLRB will not assist a union in breaching its contractual obligations. Thus, if a union agrees not to represent a specified group of employees, the Board will not order an employer to bargain as to those employees. See e.g., *Essex County News Co. Inc.,* 76 N.L.R.B. 1340 (1948); *Briggs Indiana Corp.,* 63 N.L.R.B. 1270 (1945). The so-called *Briggs Indiana* rule is applied only where the contract contains an express promise by the union to refrain from accepting the specified employees as members. *Cessna Aircraft Co.,* 123 N.L.R.B. 855, 856–57 (1959). A contract clause which merely excludes a group of employees from a unit description is insufficient, in and of itself, to effect a limitation on the employees' right to select the representative of their choice. *Id.*

■ Contractual terms which exempt specified employees from a union's jurisdiction may constitute an agreement not to represent those employees. *Essex County News Co. Inc.,* 76 N.L.R.B. 1340 (1948). The language upon which Peabody relies, quoted above, does not amount to such an agreement. When the parties intended to bar the union from representing certain categories of supervisory employees they did so in clear and unambiguous terms.[1] The quoted language was simply intended to exempt the specified employees from the coverage of the 1981 agreement.

---

1. The agreement states, in part: "The Union will not seek to organize or ask recognition for such expected supervisory employees during the life of this contract."

■ At the very least the NLRB's interpretation of the contract was reasonable and consistent with the policies of the Act. It is therefore entitled to deference. *N.L. R.B. v. Southern California Edison Co.,* 646 F.2d 1352, 1362 (9th Cir.1981); *N.L.R.B. v. C.K. Smith & Co.,* 569 F.2d 162, 167 (1st Cir.1977), *cert. denied,* 436 U.S. 957, 98 S.Ct. 3070, 57 L.Ed.2d 1122 (1978).

### Timeliness

Peabody filed objections to the October 2 election, based on certain alleged conduct attributable to the UMWA. The Regional Director issued a supplemental decision addressing those objections on November 12, 1981. The supplemental decision was mailed to Peabody on Thursday, November 12. Peabody's request for review was sent by overnight mail on November 25, 1981. Due to the fact that November 26 was Thanksgiving, a legal holiday, that request was not received by the NLRB until November 27, 1981. The NLRB rejected the request for review as untimely. It asserted that exceptions to decisions which are served by mail must be filed within thirteen days after the date of the decision.

The basic filing provision, 29 C.F.R. § 102.69, provides that a party may file a request for review with the NLRB within ten days of service. Section 102.114 explains how that time period is to be computed:

> In computing any period of time prescribed or allowed by these rules the day of the act, event, or default after which the designated period of time begins to run, is to be excluded. The last day of the period so computed is to be included, unless it is a Sunday or a legal holiday, in which event the period runs until the end of the next day which is neither a Sunday nor a legal holiday.... Whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after service of a notice or other paper upon him, and the notice or paper is served upon him by mail, three days shall be added to prescribed period ...

The narrow issue presented by this appeal is the proper interpretation of § 102.-114. The N.L.R.B. interpreted the section to allow a maximum of thirteen days in which to file a request for review. It simply added the three days allowed for service by mail to the original ten day period and concluded that the request was due on Wednesday, November 25—the day it was mailed.

Peabody argues that, because the original ten day period ended on a Sunday, § 102.-114 requires that the prescribed period be computed by first extending the deadline to the end of Monday, November 23. It was at that point, it argues, that the three days should have been added—giving it until Thursday, November 26 to file. Inasmuch as November 26 was a legal holiday the filing on Friday, November 27 was timely.

The NLRB's interpretation does have the advantage of simplicity. It permits time periods to be calculated without reference to a calendar. At least two state courts have endorsed similar interpretations of analogous state law provisions. *Wheat State Telephone Co. v. State Corporation Commission,* 195 Kan. 268, 403 P.2d 1019 (1965); *In re Estate of Iofreda,* 241 Minn. 335, 63 N.W.2d 19 (1954); *see also* 4 C. Wright and A. Miller, *Federal Practice and Procedure,* § 1171 (1972) (relying on *Wheat State* and *Estate of Iofreda* to support a similar interpretation of the federal rules.) However, neither court undertook a detailed analysis of the statutory language in question.

■ If we were writing on a clean slate, we might be inclined to agree with the Board. However, in *Kessler Institute for Rehabilitation v. N.L.R.B.,* 669 F.2d 138 (3d Cir.1982), the Third Circuit rejected the N.L.R.B.'s proposed interpretation of § 102.114. The court reasoned that § 102.-114 requires that the prescribed time period be calculated by excluding Sundays and legal holidays without reference to the manner of service. Only after that period has been computed does the regulation require

the addition of three days if service was effected by mail. 669 F.2d at 141.[2]

The Third Circuit's interpretation of § 102.114 is certainly permissible. We think it inadvisable to create an inconsistency between the circuits. We therefore adopt the rule of *Kessler* and hold that the N.L.R.B. erred in refusing to consider Peabody's request for review.

The petition for enforcement is denied. The petition for review is granted and the matter is remanded to the NLRB for consideration of Peabody's request for review of the Regional Director's supplemental decision of November 12, 1981.

**2.** The court refused to defer to the NLRB's interpretation of its own regulation because the issue involved was purely one of law. The NLRB's administrative expertise was not implicated in any way. In addition, the court feared that adoption of the Board's interpretation might have far reaching effects as the language of § 102.114 is almost identical to that of Fed. R.Civ.P. 6(a), Fed.R.Crim.P. 45(a), (e) and Fed. R.App. 25(c).