**SERVAIR, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**NATIONAL LABOR RELATIONS BOARD, Cross-Petitioner,**

v.

**SERVAIR, INC., Cross-Respondent.**

Nos. 82–7691, 83–7034.

United States Court of Appeals, Ninth Circuit.

Submitted Jan. 30, 1984.

Decided Feb. 28, 1984.

Parry Grover, Davis, Wright, Todd, Riese & Jones, Anchorage, Alaska, for petitioner.

Elliott Moore, Washington, D.C., for respondent.

Before TRASK and GOODWIN, Circuit Judges, and EAST *, District Judge.

GOODWIN, Circuit Judge.

Servair petitions this court under 29 U.S.C. § 160(f) to set aside an order of the National Labor Relations Board finding that Servair violated § 8 of the National Labor Relations Act, 29 U.S.C. § 158, by discharging 19 employees. Servair contests the Board's refusal to defer to an earlier arbitration decision in Servair's favor. The Board found that the strike had been in response to the illegal discharge of a fellow-employee and was therefore protected activity despite the "no-strike" clause in the collective bargaining agreement. *See Mastro Plastics Corp. v. Labor Board,* 350 U.S.

270, 76 S.Ct. 349, 100 L.Ed. 309 (1956). The Board cross-petitions for enforcement of its order that these employees be reinstated with back pay.

## I. Facts

Servair furnishes ground services to airlines with routes passing through Anchorage, Alaska. In 1976, while Servair's employees were represented by the International Association of Machinists and Aerospace Workers (Machinists), the Teamsters Union began an organizing campaign at Servair, and in 1977 the Teamsters filed a representation petition with the Board.

During the election campaign Servair management repeatedly attempted to influence the outcome of the election. Servair management interrogated employees, either instigated surveillance of employees or created the impression of surveillance, threatened to discharge employees if the Teamsters won, and discriminated against Teamster job applicants. The administrative law judge found that these practices violated 29 U.S.C. § 158. The company did not except to the findings, and does not contest them here.

Events following the election in April 1977 are, however, disputed. A third union, the International Union of Operating Engineers, intervened, was openly supported by management, and received a majority of the employees' votes. In June, Servair fired George MacLean, who had been active in the Teamsters' organization campaign. MacLean filed a grievance and was reinstated. MacLean later left the company—voluntarily, according to Servair.

Before the grievance committee met on MacLean's discharge, however, 19 Servair employees stopped work to protest his firing. The Machinists-Servair collective-bargaining agreement, still in force, contained a "no-strike" clause. Servair discharged the strikers, but on the same day offered to reinstate them. Most of the 19 striking

---

* The Honorable William G. East, United States District Judge for the District of Oregon, sitting by designation.

employees did not return to work, but filed grievances. The grievances were denied and went to arbitration under the terms of the bargaining agreement. The Machinists, representing the strikers at arbitration, chose to pursue a theory that the work stoppage did not constitute a strike. The arbitrator upheld the discharges, however, finding that the stoppage had violated the "no-strike" clause in the contract.

At approximately the same time the grievances were filed, the Teamsters filed charges with the Board alleging that Servair had committed an unfair labor practice by discharging the 19 employees. The Board issued a complaint that was consolidated with the pending complaints arising from the election. The administrative law judge, refusing to defer to the arbitral award upholding the discharges, found that MacLean's discharge had been discriminatory and that the strike in response to his discharge was protected activity. The administrative law judge concluded that the discharge of the strikers was an unfair labor practice and recommended that the strikers be reinstated with back pay. The Board adopted the findings and recommendations of the administrative law judge.

## II. Deferral

The primary issue before us is whether the Board properly refused to defer to the arbitral award upholding the discharge of the 19 strikers.

■■■ The Board is provided with statutory authority under section 10(a) of the National Labor Relations Act, 29 U.S.C. § 160(a),[1] to adjudicate and remedy unfair

labor practices. The presence of other means of resolving disputes, including arbitration, does not oust the Board of jurisdiction. *NLRB v. Strong,* 393 U.S. 357, 89 S.Ct. 541, 21 L.Ed.2d 546 (1969); *Ad Art, Inc. v. N.L.R.B.,* 645 F.2d 669, 674 (9th Cir.1980). The Board has considerable discretion, however, to respect an arbitration award if to do so serves the fundamental purposes of the Act. *Carey v. Westinghouse Corp.,* 375 U.S. 261, 270–72, 84 S.Ct. 401, 408–09, 11 L.Ed.2d 320 (1964).

■■■ In making its deferral decision, the Board is required to accommodate two competing statutory objectives. *N.L.R.B. v. Max Factor and Co.,* 640 F.2d 197, 201 (9th Cir.1980), *cert. denied,* 451 U.S. 983, 101 S.Ct. 2314, 68 L.Ed.2d 840 (1981). One is to promote industrial stability by encouraging the private resolution of labor disputes through an arbitration process agreed upon by the parties. *Gateway Coal Co. v. Mine Workers,* 414 U.S. 368, 377–79, 94 S.Ct. 629, 636–37, 38 L.Ed.2d 583 (1974); *Steelworkers v. Enterprise Corp.,* 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960); *Steelworkers v. Warrior & Gulf Co.,* 363 U.S. 574, 578, 80 S.Ct. 1347, 1350, 4 L.Ed.2d 1409 (1960); 29 U.S.C. § 173(d).[2] The other objective, equally important, is the Board's statutory obligation to protect employees in the exercise of protected Section 7 rights by preventing unfair labor practices.[3] *See Ad Art,* 645 F.2d at 675–76.

■■■ The task of accommodating these two objectives falls initially on the Board. *Ad Art,* 645 F.2d 674; *Max Factor,* 640 F.2d at 201. Our review of the Board's deferral

---

1. 29 U.S.C. § 160(a) provides in part: "The Board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice (listed in section 158 of this title) affecting commerce. This power shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law or otherwise...."

2. The Labor Management Relations Act, section 203(d), 29 U.S.C. § 173(d) provides, in part: "Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes

arising over the application or interpretation of an existing collective-bargaining agreement...."

3. The National Labor Relations Act, section 7, 29 U.S.C. § 157 provides, in part: "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection...."

decision is limited to determining whether the Board has abused its discretion. *Hawaiian Hauling Service, Ltd. v. N.L.R.B.,* 545 F.2d 674, 676 (9th Cir.1976), *cert. denied,* 431 U.S. 965, 97 S.Ct. 2921, 53 L.Ed.2d 1061 (1977). This court will not deny enforcement "unless the Board clearly departs from its own standards or its standards are themselves invalid." (Footnote omitted.) *Id.; see also Ad Art,* 645 F.2d at 674–675; *Max Factor,* 640 F.2d at 201; *N.L.R.B. v. Safeway Stores, Inc.,* 622 F.2d 425, 428 (9th Cir.1980), *cert. denied,* 450 U.S. 913, 101 S.Ct. 1353, 67 L.Ed.2d 337 (1981); *Alfred M. Lewis, Inc. v. N.L.R.B.,* 587 F.2d 403, 407 (9th Cir.1978).

The Board first articulated its deferral standards in *Spielberg Manufacturing Company,* 112 N.L.R.B. 1080 (1955), in which it announced that it would defer to an existing arbitration award if: (1) the arbitration proceedings appeared to have been fair and regular; (2) all parties agreed to be bound; and (3) the arbitrator's decision was not "clearly repugnant to the purposes and policies of the Act." *Id.* at 1082; *see also International Harvester Co., Indianapolis Works,* 138 N.L.R.B. 923, (1962) *enforced sub nom., Ramsey v. N.L.R.B.,* 327 F.2d 784 (7th Cir.), *cert. denied,* 377 U.S. 1003, 84 S.Ct. 1938, 12 L.Ed.2d 1052 (1964).

The Board later narrowed its deferral policy, concluding that deferral would be inappropriate even when the *Spielberg* requirements had been satisfied unless there was at least some evidence that the arbitrator had in fact passed upon the unfair labor practice issue. *Yourga Trucking, Inc.,* 197 N.L.R.B. 928 (1972); *Airco Industrial Gases,* 195 N.L.R.B. 676 (1972).

Soon thereafter, however, the Board concluded that it was being insufficiently deferential to arbitral awards. Adopting the position of the dissenting opinions in *Yourga* and *Airco,* the Board held in *Electronic Reproduction Service Corp.,* 213 N.L.R.B. 758 (1974), that where the statutory issue could have but had not been raised at arbitration, it would defer unless there were unusual circumstances. Because in *Electronic Reproduction,* it appeared that the union had knowingly refrained from raising the statutory issue—discriminatory discharge—at arbitration, the Board reasoned that allowing the union to raise the issue before the Board furthered "the very multiple litigation which *Spielberg* . . . [was] designed to discourage." *Id.* at 761; *see also* R. Gorman, *Labor Law* 742 (1976).

This expansion of *Spielberg* soon met with judicial resistance. *See Banyard v. N.L.R.B.,* 505 F.2d 342 (D.C.Cir.1974). In *Stephenson v. N.L.R.B.,* 550 F.2d 535 (9th Cir.1977), this court also expressly rejected *Electronic Reproduction,* finding it an "unjustifiable extension" of the Board's deferral policy. *Stephenson,* 550 F.2d at 539. The *Stephenson* court reasoned that absent substantial and definite proof that the arbitrator had been presented with and "clearly decided" the statutory issue, deferral was an abdication of the Board's obligation to adjudicate unfair labor practices. *Id.*

In apparent response to this judicial resistance, the Board overruled *Electronic Reproduction.* In *Suburban Motor Freight, Inc.,* 247 N.L.R.B. 146 (1980), the Board declared that it "will no longer honor the results of an arbitration proceeding under *Spielberg* unless the unfair labor practice issue before the Board was both presented to and considered by the arbitrator." *Id.* at 146–47; *see also N.L.R.B. v. Magnetics Intern., Inc.,* 699 F.2d 806 (6th Cir.1983); "The clear weight of authority holds that the Board should not defer in the absence of evidence that the arbitrator has resolved the unfair labor practice charge and that the *Spielberg* criteria have been met." *Magnetics,* 699 F.2d at 809. *See also Liquor Salesmen's Union Local 2 v. N.L.R.B.,* 664 F.2d 318 (2d Cir.1981), *cert. denied,* 456 U.S. 973, 102 S.Ct. 2236, 72 L.Ed.2d 847 (1982); *St. Luke's Memorial Hospital, Inc. v. N.L. R.B.,* 623 F.2d 1173, 1178 (7th Cir.1980).[4]

Applying its deferral criteria here, the Board gave essentially two reasons for its decision not to defer: (1) an "inherent con-

---

4. In *NLRB v. Motor Convoy, Inc.,* 673 F.2d 734 (4th Cir.1982), the Fourth Circuit appears to take a contrary view, following the Board's reasoning in *Electronic Reproduction.*

flict of interest" in the Machinists' representation of the striking employees; and (2) the apparent failure of the arbitrator to address the unfair labor practice issues.[5]

Servair contends that the Board abused its discretion in concluding that the arbitrator had not addressed the statutory issue.[6] Servair notes that it had explicitly requested that the arbitrator address the possibility that the strike was a response to alleged unfair labor practices, in order to satisfy the *Spielberg* criteria.

Nonetheless, the Machinists, who represented the strikers at arbitration, offered no justification, statutory or otherwise, for the strike. Instead, the Machinists pursued the theory that the activity giving rise to the discharges was not a strike for purposes of the contract's "no-strike" clause. Our reading of the arbitration transcript reveals that the Machinists offered no evidence or contention that would justify striking despite the "no-strike" clause. Similarly, the arbitrator's opinion and award gives no indication whatsoever that he considered a possible statutory justification for the strike. If anything, the opinion strongly suggests that the arbitrator, aware that an NLRB hearing to consider the statutory

validity of the charges was pending, chose to address only the contractual issue.[7]

■ The contention by Servair that because the statutory issue had been raised, the arbitration provided "ample opportunity" to develop testimony regarding the reasons for the strike, misinterprets the "clearly decided" requirement. While it is not necessary for the arbitrator to expressly review the statutory issue in his written memorandum, *Bloom v. N.L.R.B.,* 603 F.2d 1015, 1020–1021 (D.C.Cir.1979), in the absence of " 'substantial and definite *proof'* that the unfair labor practice issue was presented and the arbitral decision indisputably resolves that issue," the "clearly decided" requirement has not been met. *Ad Art,* 645 F.2d at 677.

■ Servair also contends that this court has not unequivocally accepted the additional criteria of *Suburban Motor Freight* and *Stephenson.* Although this contention is incorrect, *see Ad Art,* 645 F.2d at 677, this court has questioned whether consideration of the "clearly decided" criterion furthers the purposes of the Act apart from its relation to the existing *Spielberg* requirements. *See Max Factor,* 640 F.2d at 203 n. 6. The "clearly decided" criterion appears relevant to the deferral analysis only to the extent that it assists in deciding whether

5. The decision and order of the three-member panel is comprised of three separate opinions. Although each member concurred in the decision not to defer, each did so for somewhat different reasons. Chairman Van De Water relies on the apparent "serious conflict of interest." Member Fanning relies on the failure of the arbitrator to address the statutory issue and the incompatibility of the arbitrator's award with Board and court precedent. Member Jenkins cites both the "apparent conflict" and the failure to address the statutory issue as the basis for his conclusion that the arbitration "was not fair and regular and that it would be repugnant to the purposes of the Act to defer to the arbitrator's award." It is unclear whether Member Jenkins found deferral here to be repugnant because he determined that Servair's activities "constituted a sufficiently flagrant interference with protected activities that the duty to prevent unfair labor practices outweighed the policy of encouraging arbitration," *see Max Factor,* 640 F.2d at 203, or solely because of his conclusion that the arbitrator failed to address the statutory issues. *See Ad Art,* 645 F.2d at 677 n. 7.

6. Servair also argues that the "clearly decided" requirement, not adopted by the Board until 1980, *see Suburban Motor Freight,* 247 NLRB 146 (1980), is not applicable to an arbitration occurring in November, 1977. *Stephenson* was decided in March, 1977, however, and explicitly limited the Board's discretion to defer by imposing the "clearly decided" criteria. *Stephenson,* 550 F.2d at 541.

7. "A hearing is scheduled on November 29, 1977 and the question of whether the discharge of the employees violated the NLRA will be one of the matters considered.

*For purposes of this arbitration* grieving the discharge of the 19 employees on June 20, 1977, the Arbitrator finds that the collective bargaining agreement between the parties to this dispute was in full force and effect, and the employees represented by the Union were bound by the terms and provisions of that agreement." Arbitrator's Opinion and Award, at 3. (Emphasis added).

the arbitrator's decision is repugnant to the Act. Where the statutory issue is primarily factual or contractual, an arbitrator is in as good, if not better, position than the Board to resolve the issue. *See Stephenson,* 550 F.2d at 538 n. 4; *Bloom v. N.L.R.B.,* 603 F.2d at 1020. And where this primarily factual or contractual issue is so concomitant with the statutory issue that the former is dispositive of the latter, a refusal to defer would result in a needless relitigation of issues. Deferral in such circumstances, therefore, may serve the purposes of the Act even where the arbitrator does not explicitly address the statutory issue. *See Stephenson,* 550 F.2d at 539 n. 7. Accordingly, where the issue was not clearly decided, deferral may still be appropriate if the resolution of the statutory issue is dependent upon the resolution of the contractual issue.

■ Here, however, the resolution of the statutory issue is not dependent on resolution of the contractual issue. The arbitrator's determination that the activity giving rise to the discharges did in fact violate the contract, in no way disposes of the statutory issue of whether the strike was in response to an unfair labor practice on the part of Servair and, if so, whether that unfair labor practice was so serious as to deprive Servair of the protection of the "no-strike" clause in the contract. *See Mastro Plastics Corp. v. NLRB,* 350 U.S. 270, 76 S.Ct. 349, 100 L.Ed. 309 (1956). Thus, we hold that the Board properly refused to defer to the arbitrator's decision.

Having concluded that the Board's refusal to defer was appropriate, it is unnecessary to consider whether the "apparent" conflict of interest between the Machinists and the 19 strikers also justifies the Board's refusal to defer.

III. The Nature of the Unfair Labor Practice Giving Rise to the Strike

■ Servair also contends that the Board erred in concluding that the strike was protected activity under *Mastro Plastics Corp. v. NLRB,* 350 U.S. 270, 76 S.Ct. 349, 100 L.Ed. 309 (1956). In *Mastro Plas-*

*tics,* the Supreme Court held that a collective bargaining agreement did not waive the employee's right to strike in response to an unfair labor practice despite the inclusion of a "no-strike, no-lockout" provision in the bargaining agreement. The NLRB has interpreted *Mastro Plastics,* to mean that "only strikes in protest against serious unfair labor practices should be held immune from general no-strike clauses." *Arlan's Department Store of Michigan Inc.,* 133 NLRB 802, 807 (1961). This interpretation has received the approval of the courts. *See Dow Chemical Co. v. N.L.R.B.,* 636 F.2d 1352, 1360–1361 (3rd Cir.1980), *cert. denied,* 454 U.S. 818, 102 S.Ct. 97, 70 L.Ed.2d 87 (1981); *N.L.R.B. v. Northeast Oklahoma City Mfg. Co.,* 631 F.2d 669, 675 (10th Cir. 1980). The unfair labor practice is "serious" if it is "destructive of the foundation on which collective bargaining must rest." *Mastro Plastics,* 350 U.S. at 281, 76 S.Ct. at 357; *Caterpillar Tractor Co. v. N.L.R.B.,* 658 F.2d 1242, 1247 (7th Cir.1981).

■ Here, both the administrative law judge and the arbitrator found the primary reason for the strike to have been MacLean's discharge. The Board, adopting the administrative law judge's findings, concluded that Servair violated the Act by discharging MacLean. This determination is supported by substantial evidence, and therefore, we affirm it. *See Universal Camera Corp. v. Labor Bd.,* 340 U.S. 474, 491–492, 71 S.Ct. 456, 466–467, 95 L.Ed. 456 (1951).

Having affirmed the Board's determination that MacLean's discharge was an unfair labor practice, we must consider the strike to have been an unfair labor practice strike. Accordingly, under the *Mastro Plastics* rationale, we must determine whether the unfair labor practice was "serious."

The administrative law judge concluded that Servair's discharge of MacLean was a "serious" unfair labor practice because, "[i]n addition to discharging MacLean illegally, [Servair] engaged in other actions in violation of Section 8(a)(1), (2), and (3) of the Act.... [Servair's] course of conduct,

designed to prevent the Teamsters from becoming the representative of its employees, was pervasive, forceful, and in flagrant violation of the Act." The Board, in turn, adopted the administrative law judge's conclusion.

 The Board's determination whether an employer's unfair labor practices are "serious" is entitled to "substantial deference" and should not be overturned "unless it is clearly shown that the Board has acted arbitrarily or capriciously." *Isla Verde Hotel Corp. v. N.L.R.B.,* 702 F.2d 268, 271 (1st Cir.1983); *N.L.R.B. v. Northeast Oklahoma City Mfg. Co.,* 631 F.2d 669, 673 (10th Cir. 1980).

 Given Servair's repeated interference with its employees' selection of a bargaining representative, of which MacLean's discharge was a part, we cannot say that the Board acted arbitrarily by determining that MacLean's discharge was a "serious" unfair labor practice for purposes of the *Mastro Plastics* rationale.

Servair's reliance on *Caterpillar Tractor Co. v. N.L.R.B.,* 658 F.2d 1242 (7th Cir. 1981), is misplaced. In *Caterpillar,* employees struck in violation of a no-strike clause to protest the employer's unilateral change in its demotion policy. Although the Seventh Circuit sustained the Board's finding that the employer's action violated section 8(a)(5) of the Act, it held that the protest strike was unprotected because the employer's action was not a "serious" unfair labor practice within the meaning of *Mastro Plastics.* The court noted that the employer's action had been based upon a good faith but mistaken interpretation of the contract's management prerogatives clause and that there had been no contemporaneous unfair labor practices. *Caterpillar,* 658 F.2d 1248.

Here, MacLean's discharge was not found to be a good faith mistake but discriminatory and part of a wide-ranging pattern of conduct resorted to by Servair in an attempt to interfere with its employees' selection of a bargaining representative. Accordingly, the policies supporting the *Caterpillar* decision do not adhere in this case.

Thus, we affirm the Board's finding that the discharge of MacLean was a serious unfair labor practice.

## IV. The Remedy

### A. Reinstatement of MacLean

 MacLean, as noted above, was fired, and then reinstated by Servair. Shortly thereafter he left Servair's employment. Servair contends that the separation was voluntary. The Board nonetheless upheld the administrative law judge's decision that MacLean be reinstated with back pay. Although the Board was unable to determine whether MacLean's departure was truly voluntary, we find nothing punitive in the remedy ordered.

 The purpose of reinstatement orders is to restore the wronged worker to the position in which he would have been without the unfair labor practice. *Golden State Bottling Co. v. NLRB,* 414 U.S. 168, 188–89, 94 S.Ct. 414, 427, 38 L.Ed.2d 388 (1973). Where an illegally discharged employee clearly would not have remained with the company even if there had been no unfair labor practice, a reinstatement order is not needed. Moreover, the remedy is not saved by deferring to compliance proceedings the "terms" of the reinstatement order, because the employee might not have stayed with the company at all. *See N.L. R.B. v. Fort Vancouver Plywood Co.,* 604 F.2d 596, 602 (9th Cir.1979), *cert. denied,* 445 U.S. 915, 100 S.Ct. 1275, 63 L.Ed.2d 599 (1980).

If the Board's order were to deprive Servair of the opportunity to show that MacLean's departure was in fact voluntary, it would risk being punitive rather than compensatory and therefore would be unenforceable. *Id.* However, the Board's order provides that Servair will have the opportunity to address the nature of MacLean's departure at the compliance proceeding. The order provides that if Servair can show that MacLean's departure was voluntary, his right to reinstatement is forfeited. Accordingly, the Board's order reinstating MacLean can be enforced. *See N.L.R.B. v.*

*Joseph Magnin Co.,* 704 F.2d 1457, 1462 (9th Cir. 1983).

## B. Interest on back pay

Servair does not challenge the Board's jurisdiction to order the reinstatement of the 19 employees with back pay and interest upon a determination that they had been illegally discharged. Servair does, however, seek a tolling of the interest on such back pay awards during the period this case was on remand to the Board. Servair argues that its liability for such interest has been unjustifiably enhanced by the Board's failure to adequately consider the proper deferral criteria when the case first arose. This argument has no merit.

As noted above, the object of the exercise of the Board's broad remedial powers here should be to "restore the economic status quo that would have obtained but for [the] wrongful discharge." *Golden State Bottling Co. v. NLRB,* 414 U.S. 168, 188–189, 94 S.Ct. 414, 427, 38 L.Ed.2d 388 (1973). Even if we were to agree that responsibility for the delay falls on the Board, to follow Servair's suggestion would penalize not the Board but the discharged strikers. Any losses sustained from the protracted nature of this litigation should more appropriately fall on Servair, which, by its violation of the Act, set the entire process in motion. The Board was within its sound discretion in providing that the burden of the loss should fall on the employer rather than the employees. *See Safeway Trails Inc. v. N.L.R.B.,* 641 F.2d 930, 934 (D.C.Cir.1979), *cert. denied,* 444 U.S. 1072, 100 S.Ct. 1016, 62 L.Ed.2d 753 (1980).

## V. Conclusion

The Board's determination that Servair's discharge of MacLean and the 19 strikers violated the Act is supported by substantial evidence on the record as a whole. The Board did not abuse its discretion by refusing to defer to the arbitrator's award under the facts of this case. We also find that the remedy ordered by the Board fairly effectuates the policies of the Act. For these reasons, we enforce the order of the Board.