**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

**and**

**Steven R. Loveall, Vincent J. Sokol and William G. Mott, Petitioners-Intervenors,**

**v.**

**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 11, AFL–CIO, Respondent.**

**No. 84–7439.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 4, 1985.

Decided Sept. 24, 1985.

statements charging annual fees.

William R. Stewart, Deputy Asst. Gen. Counsel, Frederick Havard, Atty., Washington, D.C., for petitioner N.L.R.B.

Robert Newman, Los Angeles, Cal., for petitioners-intervenors Loveall, Sokol and Mott.

Elizabeth R. Lishner, Davis, Frommer & Jesinger, Los Angeles, Cal., for respondent.

Before GOODWIN, FLETCHER and PREGERSON, Circuit Judges.

GOODWIN, Circuit Judge.

The National Labor Relations Board (NLRB) applies for enforcement of an order finding Local 11 of the International Brotherhood of Electrical Workers, AFL–CIO, (Local 11) guilty of an unfair labor practice in the operation of its hiring hall. We grant the application and enforce the NLRB order.

Local 11 has a collective bargaining agreement with the Los Angeles County Chapter of the National Electrical Contractors Association under which it is empow-ered to operate an exclusive hiring hall within Los Angeles County. Sections 4.01 through 4.16 of the agreement set forth the referral procedures by which employees are dispatched to employers from the Local 11 hiring hall. Under § 4.05, Local 11 registers applicants for employment into one of four different groups. Referrals for employment are made from Groups I, II, III, and IV in that order. Section.§ 4.05 of the agreement defines the requirements for Group I eligibility as follows:

> GROUP I. All applicants for employment who have four or more years' experience in the trade, are residents of [Los Angeles County], have passed a journeyman wiremen's examination given by a duly constituted Inside Construction Local Union of the IBEW or have been certified as a journeyman wireman by any Inside Joint Apprenticeship and Training Committee and who have been employed for a period of at least one year in the last four years under a collective bargaining agreement between the parties to this agreement.

Section 4.09 defines "resident" as

> "a person who has maintained his *permanent home* in [Los Angeles County] for a period of not less than one year or who, having a *permanent home* in this area, has temporarily left with the intention of returning to this area as his *permanent home.*" (emphasis in original)

In late 1982 and early 1983, Steven R. Loveall, Vincent J. Sokol, and William G. Mott, charging parties below and intervenors on appeal, individually sought and were denied permission by the local's business manager to register for Group I referrals. At the time of their application for Group I referrals, each of the intervenors was a traveller—a member of a local of the International Brotherhood other than Local 11—and was registered for Group II referrals. Eligibility for Group II is the same as for Group I except for the residency requirement.

The intervenors individually appealed the business manager's decision to an Appeals Committee convened pursuant to § 4.16 of

the agreement. Section 4.16 authorizes the Appeals Committee to consider complaints arising out of the operation of the hiring hall.

The Appeals Committee, comprised of a representative of Local 11, a representative of the Contractors Association, and a public member, denied each appeal on the grounds that none of the intervenors met the Group I residency requirements. According to the Appeals Committee, a minimum of three-years residency in Los Angeles County and 4000 hours-worked (approximately 2 years) under the agreement were required for Group I eligibility. These requirements are not written, contained in any notice to employees, or stated in the agreement.

The intervenors filed individual charges with the NLRB which were heard by an administrative law judge. Concluding that the agreement terms regarding residency were ambiguous, the judge adopted the interpretation of the Appeals Committee. He found that the three-year residency and 4000 hours-worked requirements were established by the Appeals Committee to assist them in determining an applicant's permanent home. The judge found that the Appeals Committee's minimum requirements were applied to *applicants* for Group I status while the provisions stated in §§ 4.05 and 4.09 of the agreement applied to employees desiring to *maintain* their Group I status. He also found that although the requirements were unpublished, they had been routinely applied. Finally, he concluded that allegations that Local 11 officials had expressed animus toward travellers were not enough to discredit his conclusion that the Appeals Committee properly interpreted and applied the agreement.

Contrary to the administrative law judge, the NLRB found that the collective bargaining agreement clearly and unambiguously defines resident and explicitly states a one-year, 2000-hours worked requirement for Group I eligibility. Accordingly, the NLRB concluded that each intervenor qualified for Group I status. The NLRB found that Local 11 had committed unfair labor practices in violation of §§ 8(b)(1)(A) and (b)(2) of the National Labor Relations Act, 29 U.S.C. §§ 158(b)(1)(A), (b)(2), by failing to follow the referral procedures set forth in the collective bargaining agreement. Alternatively, the NLRB found that even if the additional requirements were legitimate, failure to give notice of them to employment applicants constituted an independent violation of §§ 8(b)(1)(A) and (b)(2).

The NLRB issued a cease-and-desist order directing the local to (1) operate the hiring hall in accordance with the procedures set forth in the collective bargaining agreement; (2) refer intervenors and other applicants for employment to positions for which they are entitled under the agreement; and (3) make intervenors whole for loss of earnings and other benefits resulting from the local's discrimination against them. This application for enforcement followed.

■ Local 11 argues that the NLRB was under a legal obligation to adhere to the Appeals Committee's interpretation of the collective bargaining agreement because the Committee is an arbitration board selected by the parties. See *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).[1]

---

**1.** From the record before this court, it appears that this issue may not have been raised before the NLRB. If the issue was not raised, § 10(e) of the Act, 29 U.S.C. § 160(e), would preclude this court's consideration of it. Absent exceptional circumstances to excuse the omission, the jurisdictional bar would be conclusive. *See Woelke & Romero Framing, Inc. v. NLRB*, 456

U.S. 645, 665–66, 102 S.Ct. 2071, 2082–83, 72 L.Ed.2d 398 (1982); *Idaho Falls Consolidated Hospitals, Inc. v. NLRB*, 731 F.2d 1384, 1386 (9th Cir.1984). Because we conclude that Local 11's arguments are without merit, however, it does not matter whether, as the local asserts, the issue was implicitly raised below.

■■ This court has acknowledged that the Board has considerable, though not unlimited, discretion to respect or disregard an arbitration decision. *Servair, Inc. v. NLRB*, 726 F.2d 1435, 1438 (9th Cir.1984). *See Carey v. Westinghouse Elec. Corp.*, 375 U.S. 261, 271, 84 S.Ct. 401, 409, 11 L.Ed.2d 320 (1964). In exercising its discretion, the Board must balance the policy in favor of settling labor disputes by arbitration with its statutory duty and authority to prevent unfair labor practices. *NLRB v. Max Factor & Co.*, 640 F.2d 197, 201 (9th Cir.1980), *cert. denied*, 451 U.S. 983, 101 S.Ct. 2314, 68 L.Ed.2d 840 (1981). The Board may decline to defer to an arbitration decision "in which there is an apparent conflict of interest between the employee and the union representing him." *NLRB v. International Longshoremen's & Warehousemen's Union*, 514 F.2d 481, 483 (9th Cir.1975) (citation omitted).

■ While courts generally defer to arbitration decisions, our review here is not so limited because we are reviewing not an arbitration decision but the NLRB's refusal to enforce such a decision. *NLRB v. South Central Bell Telephone Co.*, 688 F.2d 345, 349 & nn. 2–4 (5th Cir.1982), *cert. denied*, 460 U.S. 1081, 103 S.Ct. 1768, 76 L.Ed.2d 342 (1983). *See also NLRB v. Acme Indus. Co.*, 385 U.S. 432, 436–37, 87 S.Ct. 565, 568–69, 17 L.Ed.2d 495 (1967) (and cases cited therein). This court's review of the Board's deferral decision is limited to determining whether the Board has abused its discretion. *Servair*, 726 F.2d at 1438–39; *Hawaiian Hauling Service, Ltd. v. NLRB*, 545 F.2d 674, 675–76 (9th Cir.1976), *cert. denied*, 431 U.S. 965, 97 S.Ct. 2921, 53 L.Ed.2d 1061 (1977). Enforcement cannot be denied " 'unless the Board clearly departs from its own standards or its standards are themselves invalid.' " *Servair*, 726 F.2d at 1439 (*quoting Hawaiian Hauling Service*, 545 F.2d at 676).

■ It is evident from the record that a conflict of interest existed between intervenors and Local 11. The Union's apparent interest in limiting the pool of employees eligible for Group I job referrals was undoubtedly at odds with the intervenors' interest in registering for them. Under these circumstances, the NLRB did not abuse its discretion by failing to defer to the Appeals Committee's decision.

■ It is well within the NLRB's authority to interpret collective bargaining agreements in order to determine whether or not unfair labor practices have been committed. *NLRB v. C & C Plywood Corp.*, 385 U.S. 421, 428–30, 87 S.Ct. 559, 563–65, 17 L.Ed.2d 486 (1967). Where the NLRB's interpretation is reasonable and not inconsistent with the Act's policies, it is entitled to deference from this court. *Peabody Coal Co. v. NLRB*, 709 F.2d 567, 569 (9th Cir.1983); *NLRB v. Southern California Edison Co.*, 646 F.2d 1352, 1362 (9th Cir.1981).

■ We agree with the NLRB that the language in the collective bargaining agreement is unambiguous. Where contractual provisions are unambiguous, the NLRB need not consider extrinsic evidence. Parol evidence is therefore not only unnecessary but irrelevant. *Irvin H. Whitehouse & Sons Co. v. NLRB*, 659 F.2d 830, 835 (7th Cir.1981); *International Brotherhood of Teamsters, Local 839 v. Morrison-Knudsen Co.*, 270 F.2d 530, 536 (9th Cir. 1959). Consequently, the NLRB properly disregarded the administrative law judge's conclusions on interpretation of the agreement where those conclusions were based on oral testimony. Absent express terms to the contrary, it was not unreasonable for the NLRB to conclude that "permanent home" meant residency in Los Angeles County for at least one year.

■ Having concluded that the provisions for Group I in the collective bargaining agreement were clear and unambiguous, the NLRB found that Local 11 violated §§ 8(b)(1)(A) and (b)(2) of the Act, 29 U.S.C. §§ 158(b)(1)(A) and (b)(2), by failing to operate the hiring hall according to the terms of the agreement. Section 8(b)(2) makes it an unfair labor practice for a union "to cause or attempt to cause an

employer to discriminate against an employee in violation of [§ 8(a)(3) ]." Section 8(a)(3), 29 U.S.C. § 158(a)(3), prohibits "discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization...." Discriminatory intent need not be proven by specific evidence of motive or purpose but may be inferred from the natural and foreseeable consequences of the local's conduct. *Local 357, International Brotherhood of Teamsters v. NLRB*, 365 U.S. 667, 675, 81 S.Ct. 835, 839, 6 L.Ed.2d 11 (1961).

 The record shows that each intervenor qualified for Group I referrals under the terms stated in the collective bargaining agreement. By refusing to allow intervenors to register for Group I referrals, the local violated the unambiguous terms of the agreement. It is undisputed that there exists no writing containing the requirements imposed on intervenors. The requirements were not posted at any of Local 11's hiring halls. Even if they had been in existence for some time and were routinely applied, the record shows that the intervenors were not informed of the requirements until after they attempted and were denied permission to register for Group I. This suggests that the local was not acting to promote the interests of intervenors as employees using the hiring hall. The local denied intervenors access to employment opportunities for which they were eligible, perhaps to preserve them for other employees. Regardless of the actual motive of Local 11, it wielded its power invidiously or arbitrarily, thereby giving "notice that its favor must be curried." Such an exercise of authority is an unfair labor practice in violation of §§ 8(b)(1)(A) and (b)(2). *NLRB v. International Ass'n of Bridge, Structural and Ornamental Iron Workers, Local 433*, 600 F.2d 770, 777 (9th Cir.1979), *cert. denied*, 445 U.S. 915, 100 S.Ct. 1275, 63 L.Ed.2d 599 (1980).

The application for enforcement is granted.