979 F.2d 854
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Tyrone GOODWIN, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
 No. 91-70216.
 United States Court of Appeals, Ninth Circuit.
 Submitted May 8, 1992.*
Decided Nov. 16, 1992.
 
 1
 Before JAMES R. BROWNING and FARRIS, Circuit Judges, and GEORGE**, District Judge.
 
 
 2
 Tyrone Goodwin appeals the National Labor Relations Board's ("the Board") decision dismissing his unfair labor practice complaint. Goodwin claimed his discharge violated sections 8(a)(1) and 8(a)(3) of the National Labor Relations Act ("the Act"), 29 U.S.C. §§ 158(a)(1), (3). The Board deferred to an arbitration award which found that Goodwin had been discharged for cause. We have jurisdiction under 29 U.S.C. § 160(f). We affirm.
 
 FACTS
 
 3
 Goodwin worked in the composites department of Teledyne Industries, Inc ("Teledyne"). He was also an area shop steward for United Automobile, Aerospace and Agricultural Implement Workers of America ("the Union"). He began to have attendance and other disciplinary problems in 1985. On September 5, 1986, he promised in writing on a Performance Correction Notice that he would have no unexcused absences for attendance. On March 6, 1987, Goodwin received another Performance Correction Notice for Excessive Attendance Discrepancies. He was written up by a supervisor in early 1988 for violations of quality and quantity of work rules.
 
 
 4
 In March of 1988, Goodwin was discharged after grabbing and shoving a supervisor. He was reinstated without backpay in May, pursuant to a grievance settlement. He signed a "Statement of Commitment" promising to have excellent attendance, to remain at his work station, to produce a quality product, and to follow management direction in performing his duties. Goodwin agreed that his failure to fulfill these commitments could result in the severance of his employment. Subsequently, however, he continued to leave his work area without permission, and received several warnings for this and for not working.
 
 
 5
 On July 18, 1988, Goodwin's supervisor, Brad Zachau, noticed Goodwin away from his work area talking to James Jones, another steward, and started timing the conversation. After 10 minutes, Zachau decided to give Goodwin a warning for being away from his work area without permission. Zachau convened a disciplinary meeting attended by Goodwin, Jones, Zachau, and manager Mike Yavno. Goodwin was told that he was being given a warning for violating the work rule prohibiting employees from "neglecting duty, loitering, wasting time, [and] being away from work station without authorization." Goodwin and Jones claimed that they were discussing union business, and that Jones had initiated the conversation, but Zachau would permit no explanation. Goodwin repeatedly called Zachau a liar during the meeting.
 
 
 6
 When Zachau handed Goodwin a written copy of the warning, Goodwin said "This is what I think of the warning," and tore it in half. Then he said "And this is what I think of you, Brad," tore it in quarters, balled up the torn paper, and tossed it across the table toward Zachau. Zachau caught the paper and asked Yavno if that was "insubordination," and Yavno replied that it was. Zachau then told Goodwin he was being suspended. Teledyne converted the suspension into a discharge several days later, based on the insubordinate acts which occurred in the conference room.
 
 
 7
 Goodwin filed a grievance, and the matter went to arbitration with the stipulation that the arbitrator was to consider whether the discharge was for just cause and, if not, what was the proper remedy. In his November 23, 1988 decision, the arbitrator concluded that Goodwin's insubordination, combined with his conduct and work habits, violated the Reinstatement Agreement. The arbitrator found that Teledyne's actions were reasonable and should be sustained.
 
 
 8
 Meanwhile, on October 7, 1988, Goodwin also filed an unfair labor practice charge with the Board, alleging violations of Section 8(a)(1) and (3) of the Act. The Board administratively deferred addressing Goodwin's charge, pending the outcome of his grievance. After reviewing the arbitrator's decision, however, the Board's Regional Director stated she believed that the arbitrator had not addressed the issues raised in Section 7 of the Act, 29 U.S.C. § 157. The administrative deferral was revoked and a complaint issued.
 
 
 9
 This prompted Teledyne to request clarification from the arbitrator on two issues: 1) if he had considered whether the conduct for which Goodwin was discharged was protected by Section 7 of the Act, and 2) whether the conduct for which Goodwin was discharged was protected by Section 7 of the Act. On March 6, 1989, the arbitrator issued a "Clarification of Arbitration Opinion." In response to the first question, the arbitrator said:
 
 
 10
 "I was aware that a charge had either been filed or would be filed by the Grievant with the NLRB related to protected activity. While I was not presented specifically with an issue dealing with the NLRA, I was aware of a claim that the Grievant, as a Union Steward, might have been engaged in Union activity sometime the day of his discharge, specifically the morning prior to the behavior that actually resulted in his discharge."
 
 
 11
 With respect to the question of whether the conduct Goodwin was discharged for was protected by the Act, the arbitrator said:
 
 
 12
 ".... No. Mr. Goodwin was discharged for his behavior in the conference room in refusing to accept the Verbal Warning, being insubordinate to his superior/manager by his physical and verbal reaction.... I concluded that Mr. Goodwin was not engaged in appropriate union activity on the morning in question, justifying mitigation of the charges.... No reason for mitigation presented by the Union/Grievant was sufficient to overturn the discharge action. Considering all of the circumstances, the management decision to terminate was reasonable."
 
 
 13
 The complaint was heard on June 21, 1989, before an ALJ, who concluded that Goodwin's discharge violated sections 8(a)(1) and (3) of the Act.
 
 
 14
 Teledyne filed exceptions, and a three-member panel of the Board dismissed the complaint. The panel declined to affirm the ALJ's decision, choosing instead to defer to the arbitrator's award because it "satisfies the requirements of Olin " and because the General Counsel failed to "satisfy his burden of proof that deferral is unwarranted."
 
 
 15
 We review the Board's decision to defer to an arbitration award for an abuse of discretion. Garcia v. NLRB, 785 F.2d 807, 809 (9th Cir.1986). The Board abuses its discretion if it "clearly departs from its own standards or the standards themselves are invalid." Id.
 
 DISCUSSION
 
 16
 The Board has "broad discretion to respect an arbitration award if to do so serves the fundamental purposes of the Act." Garcia, 785 F.2d at 809; Servair, Inc. v. NLRB, 726 F.2d 1435, 1438 (9th Cir.1984).
 
 
 17
 The Board must balance two competing, equally important statutory objectives in making deferral decisions. One is to "promote industrial stability by encouraging the private resolution of labor disputes through an arbitration process agreed upon by the parties." Id.[1] The other is the Board's "statutory obligation to protect employees in the exercise of protected Section 7 rights by preventing unfair labor practices." Id.[2]
 
 
 18
 To assist in accommodating these objectives, the Board has established standards to follow in making its determination whether to defer to an existing arbitration award. The current standards favor deferral if: 1) the arbitration proceedings were fair and regular; 2) the parties agreed to be bound; 3) the decision was not "clearly repugnant to the purposes and policies of the Act;" Spielberg Manufacturing Company, 112 N.L.R.B. 1080, 1082 (1955); 4) "the contractual issue is factually parallel to the unfair labor practice issue"; and 5) "the arbitrator was presented generally with the facts relevant to resolving the unfair labor practice." Olin Corporation, 268 N.L.R.B. 573, 574 (1984).
 
 
 19
 With respect to the "clearly repugnant" standard, the Board will defer "unless the arbitrator's decision is not susceptible to an interpretation consistent with the Act." Id. The burden is on the party seeking rejection of deferral to show that the deferral standards have not been met. Id.
 
 
 20
 The parties do not dispute that the arbitration proceedings appeared to be fair and regular and the parties agreed to be bound.
 
 
 21
 Goodwin argues that the first Olin deferral requirement--"the contractual issue is factually parallel to the unfair labor practice issue"--was not satisfied in his case. He claims that the facts relevant to the contractual issue were: 1) the reinstatement agreement, 2) the prior warnings, and 3) the quality and quantity of his work. Goodwin argues that the contractual facts are distinct from the facts relevant to the statutory issue, i.e., the tool crib conversation dealt with union business and was initiated by Jones. Thus, according to Goodwin, the statutory issue of whether he was disciplined for union activities is not factually parallel to the contractual issue of whether he had violated his reinstatement agreement. Goodwin's argument fails because the contractual and statutory facts in his case are inextricably intertwined, as indicated in the Board's findings.
 
 
 22
 The Board found that, in order to determine whether Goodwin was discharged for cause, the arbitrator had to consider whether the July 18 warning was proper, and whether Goodwin's insubordinate conduct in the conference room warranted his discharge.
 
 
 23
 The Board found the arbitrator reached the following factual conclusions in determining the warning to be proper: 1) Teledyne's "closer scrutiny" of Goodwin's actions on July 18 was "justified by his continual misconduct since the May reinstatement agreement," 2) Goodwin was "not engaged in appropriate union activity" during his conversation with Jones, 3) during that conversation, Goodwin was in violation of his earlier reinstatement agreement, 4) the verbal warning given on July 18 followed Teledyne's "established corrective progressive discipline scheme," 5) Goodwin's admitted behavior in the conference room meeting constituted "insubordination and violated his reinstatement agreement," 6) "notwithstanding his special status with the Union, he has received all of the special treatment which is expected."
 
 
 24
 The Board concluded that, considering how the issues were "framed and presented to the arbitrator.... his 'just cause' determination was factually parallel to the unfair labor practice issue." The Board did not abuse its discretion in so finding.
 
 
 25
 Goodwin does not dispute that the second Olin standard was satisfied. The arbitrator's decision and clarification indicate that he had before him the facts necessary to decide the statutory issue. He summarized the "contentions of the union" as follows:
 
 
 26
 The Union claims that the Company has not recognized the unique character of the Grievant who not only is a rank and file employee but an active Union Representative. He, accordingly, does engage in Union activities which the Company does not like.... The Grievant, in the conference room on July 18th, was handed what he presumed was his own copy of the verbal warning. Being shocked and surprised at the turn of events, he did tear up and say what he was alleged to have said, but that paper was his copy and did not constitute insubordination. What the Company did not check into was the nature of the conversation that Mr. Goodwin was having with Mr. Jones earlier the morning of July 18. That had to do with an employee problem which had to be resolved and discussed as Mr. Jones was leaving the work area. There was no attempt to waste time or otherwise be out of the work area. The Grievant had been at the tool crib nearby, where the conversation occurred, and did not take exorbitant time....
 
 
 27
 Goodwin finally contends that the arbitrator's award was repugnant to the Act and therefore not entitled to deference under Spielberg and Olin. As previously noted, an award is repugnant to the Act if it is not susceptible to an interpretation consistent with the Act. Olin, 268 N.L.R.B. at 574. Goodwin relies heavily on the ALJ's decision, which held that the arbitrator's award was repugnant because the arbitrator had not clearly decided the unfair labor practice issue.
 
 
 28
 This Circuit has held that deferral may be appropriate even where the arbitrator did not clearly decide the statutory issue if the statutory issue is primarily factual or contractual and its resolution is dependent on the resolution of the contractual issue the arbitrator decided. Servair, 726 F.2d at 1440-41.
 
 
 29
 The statutory issue in Goodwin's case--whether he was discharged for engaging in protected conduct--is primarily factual. As discussed previously, the resolution of the statutory issue here is dependent on the resolution of the contractual issue.
 
 
 30
 The arbitrator determined that Goodwin was not engaged in protected activity on the morning of July 18. Additionally, in his "Discussion, Findings and Conclusion" section, the arbitrator found that, although Goodwin had promised "excellent attendance, including remaining at his assigned work station," that "[t]his the Grievant has not done and notwithstanding his special status with the Union, he has received all of the special treatment which is expected." Goodwin's conduct and work habits, combined with the "triggering event" of his insubordinate actions in the conference room on July 18, 1988, persuaded the arbitrator that Goodwin violated the Reinstatement Agreement, and Teledyne's actions were "reasonable therefore and will be sustained."
 
 
 31
 It is thus clear that the arbitrator considered the statutory issue in making his decision. The fact that he and the ALJ reached different results does not mean that the arbitrator's award was not entitled to deferral. Even if the Board would have decided the case differently, deferral is still appropriate if the Spielberg and Olin standards are satisfied. The Board emphasized in Spielberg that its decision to defer did not mean "that the Board would necessarily decide the issue of the alleged strike misconduct as the arbitration panel did." Spielberg, 112 N.L.R.B. at 1082.
 
 
 32
 Goodwin argues that his conference room behavior was protected activity too, because it arose as a result of the arguably protected tool crib conduct. He claims that "at most, it is the kind of direct protest preliminary to a formal grievance anticipated by NLRB v. City Disposal Systems, 465 U.S. 822, 104 S.Ct. 1505, 79 L.Ed.2d 839 (1984)." However, the protest in City Disposal was an employee's refusal to drive a truck with bad brakes. The issue in that case was whether the refusal was concerted activity. That is not the situation here.
 
 
 33
 Goodwin claims that his protest was "not nearly as abusive as the shouting and profanity found to be protected in" Hawaiian Hauling Service v. NLRB, 545 F.2d 674 (9th Cir.1976). Goodwin's reliance on Hawaian Hauling is misplaced. That case found that the Board acted within its discretion by refusing to defer to an arbitration decision that upheld the discharge of an employee who called his supervisor a liar during a grievance meeting. The court noted "grievance meetings often generate high emotions" so "[s]houting and profanity are common and are protected areas in this setting," id. at 676 (emphasis added), because a contrary result could lead to a "possible chill on pursuing grievances," id. at 677.
 
 
 34
 Goodwin's conduct did not take place in a grievance meeting but in a disciplinary context. As the Hawaiian Hauling court made clear, the distinction is crucial. See id. at 677 n. 9 ("The authorities cited by petitioner are inapt because they do not involve activities during the course of the grievance procedure.... [G]rievance procedures are analogous to litigation.").
 
 
 35
 The arbitrator was presented generally with the facts necessary to decide the statutory issue, and the contractual and statutory issues were factually parallel. His determination that Goodwin was discharged for cause, not for protected conduct, was reasonable. Thus, his determination was consistent with, and not repugnant to, the Act. The Board did not abuse its discretion in deferring to the arbitration award.
 
 
 36
 Goodwin urges us to "follow the logic in Taylor [v. NLRB, 786 F.2d 1516 (11th Cir.1986) ] and reject the Olin standards for deferral."
 
 
 37
 In Taylor, the Eleventh Circuit sharply criticized the Olin deferral standard. The Court interpreted the standard as "presuming, until proven otherwise, that all arbitration proceedings confront and decide every possible unfair labor issue...." The Court found that this "does not protect sufficiently an employee's rights granted by the National Labor Relations Act."
 
 
 38
 In Taylor, the grievance was heard by a "Multi-State Committee" of union and company representatives. The Committee held a hearing but was unable to reach a decision. Taylor, 786 F.2d at 1517. The case was appealed to the "Area Committee," which heard the grievance on the basis of the transcript of the Multi-State Committee. Taylor was not permitted to attend and the Union representative made no statement on his behalf. Id. The complete Area Committee decision consisted of the following: "DECISION: Case No. 15 DENIED, COST TO THE UNION." Id.
 
 
 39
 Taylor filed charges with the Board, which issued a complaint. The ALJ declined to defer to the Area Committee's denial of Taylor's complaint. The ALJ reached the merits of Taylor's grievance, concluding that his discharge violated the Act. Id. The ALJ found that "the 'cursory' findings of the Area Committee provided no basis for deferral." Id. at 1518.
 
 
 40
 Relying on Olin, the Board reversed the ALJ's decision, finding that the General Counsel had failed to demonstrate that the Area Committee did not adequately consider the unfair labor practice.
 
 
 41
 The Taylor Board did not follow its own standards. Olin reaffirmed the Spielberg deferral requirements, one of which prohibits deferral if the arbitrator's award is repugnant to the Act. No one can reasonably argue that a nine-word "decision" adequately protects employee rights under the Act or is consistent with the Act. The Taylor court stated that the requirement "that the proceedings below appear to have been fair and regular can hardly be satisfied in this context." Id. at 1522.
 
 
 42
 The Eleventh Circuit, on review of the Board's application of Olin, criticized the standards which apparently produced such a result. The Court found that the Multi-State Committee clearly considered the statutory issue in its hearing. "If that hearing had produced a dispositive result, then deferral to that result would have been proper.... It is the Area Committee's decision, however, that is relevant for deferral purposes...." Id. The court found no sign that the "Area Committee considered any unfair labor practice claim." Id.
 
 
 43
 Seven other circuits, including the Ninth, have either mentioned or applied the Olin standard, but none have rejected it. Bakery, Confectionery and Tobacco Workers v. NLRB, 730 F.2d 812, 815-16 (D.C.Cir.1984) (applied); Hammontree v. NLRB, 925 F.2d 1486, 1490-91 (D.C.Cir.1991 (en banc)) (distinguished because case involved pre-arbitration deferral); Nevins v. NLRB, 796 F.2d 14, 18 n. 1 (2nd Cir.1986) (applied Olin standard--Court stated it did not reach issue discussed in Taylor because Olin standard not satisfied); NLRB v. Yellow Freight Systems, 930 F.2d 316, 321 (3rd Cir.1991) (cited); NLRB v. Ryder/P.I.E. Nationwide, 810 F.2d 502, 506 (5th Cir.1987) (applied); Grand Rapids Die Casting v. NLRB, 831 F.2d 112, 115-16 (6th Cir.1987) (cited); Garcia, 785 F.2d at 809-10 (applied with apparent approval); Mahon v. NLRB, 808 F.2d 1342, 1345 (9th Cir.1987) (distinguished--involved settlement agreement so Court declined to address Taylor ); Oil, Chemical and Atomic Workers v. NLRB, 842 F.2d 1141, 1146 (9th Cir.1988) (unnecessary to address validity of Olin--remanded based on Board's failure to examine extrinsic evidence of intent); Harberson v. NLRB, 810 F.2d 977, 984 (10th Cir.1987) (did not address whether Olin standard as applied by Board was permissible under Act because Board did not explain how Olin applied).
 
 
 44
 Because the Spielberg and Olin standards, as applied in this case, adequately protected Petitioner's rights under the Act, and because Taylor is factually distinguishable, we decline to follow Taylor.
 
 
 45
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 Honorable Lloyd D. George, U.S. District Judge for the District of Nevada, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The National Labor Relations Act, Section 203(d), 29 U.S.C. § 173(d) provides in part: "Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement ..."
 
 
 [2]
 Section 7 of the Act, 29 U.S.C. § 157, provides in pertinent part: "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection...."
 Section 8(a)(1) of the Act, 29 U.S.C. § 158(a)(1), provides: "It shall be an unfair labor practice for an employer.... to interfere with, restrain, or coerce employees in the exercise of rights guaranteed in section 7."