**Michael M. SCHAEFER, an individual proprietor, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 82–3201.

United States Court of Appeals, Third Circuit.

Argued Jan. 6, 1983.

Decided Jan. 19, 1983.

Rehearing and Rehearing In Banc Denied March 11, 1983.

---

4. W. Shakespeare, Measure for Measure, II, ii, 107–08 (The Riverside Shakespeare 309 (Houghton-Mifflin Co. 1974)).

James B. Hecht (argued), Richard V. Sica, Thorp, Reed & Armstrong, Pittsburgh, Pa., for petitioner.

Vivian A. Miller, Mendelssohn V. McLean (argued), William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, Elliott Moore, Deputy-Associate Gen. Counsel, N.L.R.B., Washington, D.C., for respondent.

Before ALDISERT, GIBBONS and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

Michael M. Schaefer, an employer, petitions for review of an order of the National Labor Relations Board directing him to pay certain employees backpay. The Board cross-petitions for enforcement of its backpay order. We enforce the Board's order.

### I

Schaefer is engaged in the recovery, sale and distribution of slag and other raw materials. His business has about 250 employees, represented by several different labor organizations. The unfair labor practice charges leading to this proceeding grew out of the efforts of the International Union of Operating Engineers, Local 66 (Operating Engineers or Union), in 1977, to organize a small unit of unorganized employees who repaired Schaefer's trucks. Schaefer preferred doing business with Laborers Local 1058 and attempted, during the Operating Engineers' organizing effort, to assist Local 1058. In October of 1977 the Operating Engineers filed a representation petition and the Laborers Union intervened. An agreement for a Consent Election was executed and a Board supervised election held on December 15, 1977. Despite Schaefer's continued support for the Laborers Union, of ten eligible voters six voted for the Oper-

ating Engineers, which, on December 23, 1977, was certified as the exclusive collective bargaining representative for the truck repair unit.

Thereafter Schaefer engaged in conduct which resulted, on March 6, 1978, in the filing by the Operating Engineers of an unfair labor practice charge with the Board. On April 27, the General Counsel filed a complaint, subsequently amended, charging that Schaefer discharged or laid off six employees for engaging in protected activities, in violation of section 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1) (1976). A hearing on the complaint was held in October, 1978.

After the unfair labor practice charge was filed Schaefer and the Operating Engineers Union pursued collective bargaining, in which the question arose whether the Union would withdraw the charge. When informed of this the General Counsel filed an amendment to the complaint, charging an unlawful refusal to bargain in good faith in violation of section 8(a)(5), 29 U.S.C. § 158(a)(5) (1976), in that Schaefer conditioned a collective bargaining agreement on a promise to withdraw the charges. Schaefer denied that an agreement was so conditioned, but alleged as an affirmative defense that in consideration of other concessions the Operating Engineers did agree that the charges would be withdrawn.

The Administrative Law Judge found that Schaefer violated section 8(a)(1) in laying off or discharging six employees. He did not find a section 8(a)(5) violation, however, because the evidence did not support the allegation that withdrawal of the charges was a condition of agreement. The Administrative Law Judge also rejected Schaefer's affirmative defense. Assuming, *arguendo*, that there was an agreement to withdraw the charges, he ruled that the Union could not bind the General Counsel or the Board. A cease and desist order and a backpay order were recommended.

On consideration of exceptions by Schaefer and the General Counsel the Board modified the recommended order to require a more favorable offer of reinstatement to

one employee, but otherwise affirmed. Thereafter Schaefer and the General Counsel executed a stipulation that the Regional Director for Region 6 could issue a notice of hearing on the amount of backpay due the six employees, and that "[i]n the event judicial proceedings are thereafter necessary to enforce or to review the Board's backpay determination, the only issue before the court will be the validity of the backpay computations for the six discriminatees listed in paragraph 2 above, as [Schaefer] concedes that in all respects the Board's Order of October 22, 1979, is valid and proper."

The Regional Director issued a Backpay Specification, to which Schaefer filed an Answer, in which he reasserted that the Operating Engineers had in the collective bargaining agreement waived backpay for all discriminatees. He also alleged that four of the six discriminatees had accepted partial payments of backpay and executed releases for any balance. The General Counsel moved to strike both defenses. The Administrative Law Judge to whom the hearing on backpay liability was referred granted that motion, holding that he was bound by the prior ruling on waiver by the Union as law of the case. As to the releases, he ruled:

> It is well settled that an individual may not waive, bargain away or compromise any backpay which might be due him (or her) since it is not a private right which attaches to the discriminatee, but is, indeed, a public right which only the Board or the Regional Director may settle.

A recommended order proposed backpay to six employees totaling $27,489.98. The Board summarily affirmed the Administrative Law Judge's backpay decision and adopted his backpay order.

These petitions followed. Schaefer contends that the backpay award is barred by the Union's agreement, and as to four employees, by their releases. The Board contends that the award is not barred by either, but that in any event those contentions may not be considered.

## II

The Board's contention that Schaefer's objections to the backpay award cannot be considered rests on two theories. The first is that fairly construed the stipulation which Schaefer executed waived the two defenses now tendered, leaving open nothing but computation of backpay amounts which are not disputed. The second is that by failing to petition for review at the time the Board affirmed the unfair practice determination, Schaefer lost the opportunity to challenge anything but amount.

■ As to the first theory, we note that neither the Administrative Law Judge who heard the backpay case nor the Board treated Schaefer's stipulation as a waiver of the right to assert the defense that the Union's agreement should bind the Board. Moreover, even if it had been so construed, it would not cover the subsequently executed releases by four employees. The Board's apparent conclusion as to the intended effect of the stipulation is that Schaefer reserved the right to object, in a proceeding seeking judicial review, on the two grounds here asserted. That interpretation is both reasonable and consistent with sound policy. It will usually make sense for an employer, who has been found to have committed an unfair labor practice and ordered to reinstate employees with backpay, to postpone a decision as to judicial review until his exposure has been fully determined. Otherwise the courts of appeals may be burdened with petitions for review in cases which might otherwise be deemed too insignificant for employers to seek review. The Board's interpretation of the stipulation is consistent with that policy.

■ We also reject the General Counsel's contention that by failing to petition for review of the initial Board decision Schaefer lost that opportunity as a matter of law. Review here is governed by section 10(f), 29 U.S.C. § 160(f) (1976). That section contains no time limit. *E.g., Buchanan v. NLRB,* 597 F.2d 388, 392 (4th Cir.1979); *Griffith Co. v. NLRB,* 545 F.2d 1194, 1197 n. 3 (9th Cir.1976), *cert. denied,* 434 U.S. 854, 98 S.Ct. 171, 54 L.Ed.2d 125 (1977); *Kovach*

*v. NLRB,* 229 F.2d 138, 141 (7th Cir.1956). *Cf. International Union of Electrical, Radio & Machine Workers v. NLRB,* 610 F.2d 956 (D.C.Cir.1979). The governing principle with respect to timeliness is laches, which obviously has no application to a situation in which an employer decides to postpone seeking judicial review of the underlying order until the full extent of his liability is determined. The General Counsel can point to no prejudice to the public's interest in unfair labor practice enforcement proceedings from employers following that intelligent course. If the General Counsel felt that judicial enforcement of other features of the order were appropriate in the interim, he was free to proceed sooner under section 10(e), 29 U.S.C. § 160(e) (1976).

Thus we reject the Board's position that Schaefer's contentions may not be considered.

### III

■ Schaefer contends that the Board should have refrained from proceeding with a backpay determination because of the private agreements made between him and the Union that the charges should be withdrawn, or at least, as to four employees, between him and them. He argues that the backpay award is in the circumstances here presented barred by the so-called *Spielberg-Collyer* doctrine. This court in *NLRB v. Pincus Brothers, Inc.—Maxwell,* 620 F.2d 367 (3d Cir.1980), approved the Board's policy of deferring, in some cases, to resolution by arbitration of disputes involving potential unfair labor practices within its jurisdiction. *Id.* at 371–75. *Pincus Brothers* did not involve deferral to mere private agreements, as distinct from arbitrations pursuant to the grievance-arbitration provisions of a collective bargaining agreement. There is authority, however, for the proposition that the *Spielberg-Collyer* doctrine applies to private settlement agreements negotiated in good faith involving mutual concessions and benefits. *Roadway Ex-*

*press, Inc. v. NLRB,* 647 F.2d 415 (4th Cir. 1981); *Krause Honda, Ltd.,* 8 AMR ¶ 18,221 (1981); *Beloit Corporation,* 6 AMR ¶ 14,177 (1979); *Coca-Cola Bottling Company of Los Angeles,* 243 NLRB 501 (1979); *Central Cartage Company,* 206 NLRB 337 (1973). This court has never approved deferral except to an arbitration proceeding. Assuming, without deciding, that we would approve Board deferral to private non-arbitral settlements of disputes involving violation of rights protected by section 7 of the Act, 29 U.S.C. § 157 (1976), we conclude that deferral certainly was not required in this instance.

In *Pincus Brothers* three opinions were written. Judge Garth, in reviewing a Board's decision not to defer to an arbitral decision, took the position that failure to defer was an error of law warranting reversal in every case. 620 F.2d at 384 (Garth, J., concurring). The author of this opinion, dissenting, took the position that deferral should be disapproved as a matter of law in cases involving alleged violations of section 7 rights, but that at least in every such case the Board's discretion to hear the case should be upheld. 620 F.2d at 398–99 (Gibbons, J., dissenting). Judge Rosenn's position was that the standard of review of a decision not to defer was abuse of discretion. 620 F.2d at 372. In finding an abuse of discretion he relied on the facts that the parties had chosen arbitration, a preferred method of resolving industrial disputes, that the arbitrator considered the substance of the unfair labor practice charges,[1] and that the arbitrator's findings were not clearly repugnant to the act. 620 F.2d at 374.

The author of this opinion still adheres to the views expressed in the *Pincus Brothers* dissent, which need not be elaborated upon. The differences between the *Pincus Brothers* dissent[2] and Judge Rosenn's position need not be resolved in this case, because applying Judge Rosenn's standards the

---

1. *See Hammermill Paper Co. v. NLRB,* 658 F.2d 155, 160–161 (3d Cir.1981).

2. The dissent is obviously closer to Judge Rosenn's abuse of discretion standard than to that espoused by Judge Garth.

Board's backpay order must be enforced. He emphasized that the arbitration proceedings must be fair and regular. In this case there were no proceedings. He emphasized that the merits of the unfair labor practice claim must have been discussed and considered. Schaefer made no showing that the merits of the section 8(a)(1) charge were discussed and considered either by the Union or by the employees who gave releases. The Board has been much less willing to defer, even to arbitral fora, when rights protected by section 7 are involved because of the great public interest in protecting those rights, as distinguished from non-statutory contract rights. *E.g., Dreis & Krump Mfg. Co. v. NLRB*, 544 F.2d 320, 330 (7th Cir.1976); *General American Transportation Corp.*, 228 NLRB 808 (1977). Given the higher scrutiny required by the Board in cases involving section 7 rights, the absence of a formal arbitration, and the absence of any information as to what scrutiny was given to the claimed violations in the two private settlements on which Schaefer relies, we cannot hold that the Board abused its discretion in entertaining the unfair labor practice claims and in awarding backpay. For the present case we need go no further.

### IV

Since Schaefer does not contest the unfair labor practice charges or the backpay calculations, his petition for review will be denied, and the Board's order will be enforced in full.