No. 82–1971. SCHAEFER *v.* NATIONAL LABOR RELATIONS BOARD. C. A. 3d Cir. Certiorari denied. 

JUSTICE O'CONNOR, with whom JUSTICE POWELL and JUSTICE REHNQUIST join, dissenting.

I would grant certiorari in this case to clarify the application of the National Labor Relations Board's policy of deferral to private resolutions of labor disputes. The Board applies this formal policy to both arbitral and nonarbitral settlements of labor disputes, including settlements of unfair labor practice charges. See *Central Cartage Co.*, 206 N. L. R. B. 337, 338 (1973). In this case, petitioner made apparent concessions in collective-bargaining negotiations to get the employees' union to withdraw its unfair labor practice charges. See 246 N. L. R. B. 181, 187, 190 (1979). Petitioner also paid cash settlements to four employees in exchange for waivers of any backpay they might be entitled to receive. 261 N. L. R. B. 272, 273 (1982). The Board refused, however, to defer to the union's waiver because the parties had not resolved the legal merits of the charges and because petitioner had not provided substantial remedies for his unfair labor practice. 246 N. L. R. B., at 190. The Board also determined that the four employees could not settle their backpay claims without Board approval and ordered petitioner to make full restitution. 261 N. L. R. B., at 273. The Court of Appeals for the Third Circuit affirmed. 697 F. 2d 558 (1983).

I

The Board's application of its deferral policy in this case is inexplicable. For example, the Board asserts that the settlement negotiations did not address and resolve the unfair labor practice claims. Brief in Opposition 7–8. The record clearly indicates, however, and, ironically, the Board's General Counsel found objectionable, see 246 N. L. R. B., at 190, that petitioner and the union engaged in extensive discussions concerning withdrawal of

the charges. *Id.*, at 187. The Board has regularly held that its decision to defer does not depend on whether it agrees with the parties' actual resolution of the dispute. See, *e. g.*, *Howard Electric Co.*, 166 N. L. R. B. 338, 341 (1967) (deference to arbitral settlement); *Terminal Transport Co.*, 185 N. L. R. B. 672, 673 (1970) (same). Rather, it requires the parties to discuss the charges to assure that the employees have made a clear and knowing waiver of their statutory right to process complaints before the Board. See *Coca-Cola Bottling Co.*, 243 N. L. R. B. 501, 502 (1979) (deference to nonarbitral settlement). It is beyond peradventure that the union and the four employees who accepted cash settlements made such a waiver here.

Similarly, the record contradicts the Board's contention that petitioner did not remedy the unfair labor practice. Brief in Opposition 8–9. Surely at least some of petitioner's bargaining concessions were attributable to the union's agreement to withdraw the unfair labor practice charges. Any concessions the union made, including waiver of the charges, would be binding upon the employees, absent evidence that the union acted in bad faith. See *Hines* v. *Anchor Motor Freight, Inc.*, 424 U. S. 554, 564–567 (1976). Even if the union's waiver was not determinative, the cash settlements the four employees accepted would be. No one who understands the economic logic of the old hunter's adage that "a bird in the hand is worth two in the bush" could dispute the substantiality of the remedy provided. Certainly the Board cannot do so, as it has approved settlements which contained *no* backpay awards. See, *e. g.*, *Krause Honda, Ltd.*, 8 AMR ¶ 18,221 (1981) (nonarbitral settlement); *Beloit Corp., Jones Division*, 6 AMR ¶ 14,177 (1979) (same).

Moreover, the Board's assertion that settlements reached *after* its decisions have issued are not substantial remedies is contrary to its previous rulings. See, *e. g.*, *Krause Honda, Ltd.*, *supra* (ruling that the timing of settlements does not affect Board's deferral policy). Issuance of an adverse Board decision should make employers more willing to settle on more generous terms. Thus, settlements reached after Board decisions should be more, not less, likely to afford substantial redress for violations of the Act than are settlements reached before that time. The Board has not articulated a substantial reason for treating such a settlement less deferentially in this case.

Finally, the Board's assertion that formal determinations of backpay claims are preferable to private resolutions of such claims, 261 N. L. R. B., at 273; 697 F. 2d, at 562, is antithetical both to the national labor policy of encouraging private dispute resolutions and to the Board's own statements that nonarbitral settlements deserve as much respect as formal resolutions of backpay claims. See *Krause Honda, Ltd., supra; Coca-Cola Bottling Co., supra.* Again, the Board has offered no reason for departing from its longstanding policy in this case.

## II

Were this simply an isolated instance of law being erroneously applied to the facts of this case I would not suggest that the Court expend its time and resources reviewing it, but the opinions of the Courts of Appeals strongly suggest that there is marked disagreement on the circumstances under which the policy of Board deferral must be exercised. See, *e. g., Roadway Express, Inc.* v. *NLRB,* 647 F. 2d 415, 422–423, and n. 15 (CA4 1981) (noting four opinions of Board and criticizing inconsistent application of deferral policy to nonarbitral settlements); *NLRB* v. *Pincus Brothers, Inc.-Maxwell,* 620 F. 2d 367 (CA3 1980) (three opinions on application of deferral policy to arbitral settlement); *Douglas Aircraft Co.* v. *NLRB,* 609 F. 2d 352 (CA9 1979) (Board must defer to arbitral settlement unless it is "palpably wrong"). In my opinion, this intercircuit confusion makes this case appropriate for certiorari review.

Moreover, I believe that an essential aspect of our national labor policy is at stake in this case. A commitment to private dispute resolution undergirds our entire national labor policy, which recognizes that the societal rewards of private negotiations outweigh any need for uniformity of result or adjudicative resolution of every labor dispute. Parties accept the risk that private settlements will differ from possible Board dispositions when they elect to proceed by negotiation, and the Board recognizes such possibilities when it adopts a policy of deference. The Board's deferral policy is deeply rooted in our national commitment to private dispute resolution and, until openly and expressly changed, must be applied uniformly and strictly. Private dispute resolution processes become unworkable if their finality is cast into doubt by the prospect of unprincipled Board interference. When there is confusion about the circumstances in which deference will

be exercised, employers and employees cannot be fully committed to private dispute resolution as a means of achieving industrial stability. I would therefore grant certiorari to clarify the application of this important national labor policy.