**Melvin D. TAYLOR, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent,**

and

**Ryder Truck Lines, Inc., Intervenor.**

**No. 85–3220.**

United States Court of Appeals, Eleventh Circuit.

April 21, 1986.

Rehearing and Rehearing En Banc Denied June 16, 1986.

Arthur L. Fox, II, Public Citizen Litigation Group, Washington, D.C., for Taylor.

Elliott Moore, Deputy Assoc. Gen. N.L.R.B., Paul J. Spielberg, Washington, D.C., for N.L.R.B.

John Paul Jones, Clearwater, Fla., for Ryder Truck Lines.

Before VANCE, Circuit Judge, HENDERSON, Senior Circuit Judge, and LYNNE*, Senior District Judge.

LYNNE, Senior District Judge:

Melvin D. Taylor challenges the National Labor Relations Board's deferral to the decision of a grievance committee to dismiss his unfair labor practice claim. We hold that deferral was not warranted and remand for further consideration by the Board.

FACTS

On December 2, 1982, Melvin D. Taylor was terminated from his job as a truck driver by Ryder Truck Lines, Inc., when he refused to drive a 1979 Ford tractor assigned to him by Ryder from its pool of vehicles. Taylor complained of several safety problems with the tractor but primarily objected to the Ford's telescoping steering column, which had frozen and could not be adjusted to accommodate his 240-pound frame.

Ryder's truckdrivers are parties to a collective bargaining agreement[1] and are represented by the International Brotherhood of Teamsters, Chauffers, Warehousemen, and Helpers of America (the Union). The Agreement states that Ryder may not require employees to operate an unsafe vehicle and further provides that disputes shall be resolved through final and binding grievance and arbitration procedures.

After his termination, Taylor filed a grievance protesting his discharge. The grievance was submitted to a Southern Multi-State Grievance Committee (the Multi-State Committee) comprised of Union and Ryder representatives. This Committee held a hearing on January 25, 1983, and heard testimony from Ryder and from Taylor but was unable to reach a decision. The case was automatically appealed to the Southern Conference Joint Area Grievance Committee (the Area Committee). At this hearing, the transcript of the first grievance proceeding was made a part of the record and a Ryder representative made a brief statement. Taylor was not permitted to be present at this hearing; the Union representative made no statement on Taylor's behalf. The Area Committee denied the grievance with no discussion other than the following pronouncement: "DECISION: Case No. 15 DENIED, COST TO THE UNION."

On March 3, 1983, Taylor filed charges with the National Labor Relations Board, which issued a complaint against Ryder on April 11 of that year. After a hearing on July 28-29, 1983, an Administrative Law Judge (ALJ) issued a recommended decision and order on September 21, 1983. The ALJ declined to defer to the Area Committee's denial of Taylor's complaint, noting that Ryder had not offered the Area Committee decision or the Multi-State Committee transcript into evidence. Reaching the merits of Taylor's grievance, the ALJ held that Taylor's refusal to drive the Ford tractor was a protected "concerted activity" and that his termination by Ryder violated Section 8(a)(3) of the National Labor Relations Act.

Ryder filed numerous exceptions to the findings and order of the ALJ. While these exceptions were pending, the Board decided *Olin Corp.*, 268 NLRB 573 (1984), in which it restated the Board's standard for deferral to arbitration procedures. On its own initiative, the Board remanded Taylor's case to the ALJ on the deferral issue alone, with instructions to reopen the

---

* Honorable Seybourn H. Lynne, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

1. Ryder's truck drivers are covered by the National Master Freight Agreement and the Southern Conference Area Over the Road Supplemental Agreement.

record and reconsider that issue in light of *Olin*.

After reviewing the transcript of the Multi-State Committee hearing and the decision of the Area Committee, the ALJ issued on July 17, 1984, a supplemental decision finding that the "cursory" findings of the Area Committee provided no basis for deferral and reaffirming its original decision.

Relying on the *Olin* decision, the Board reversed the supplemental decision,[2] holding that the General Counsel had not met its burden of affirmatively demonstrating that the unfair labor practice had not received adequate consideration by the Area Committee. This appeal followed.

## DISCUSSION

Taylor contends that the ALJ's decision not to defer to the arbitral finding of the Area Committee was proper because it could not be determined from the Committee's decision whether Taylor's unfair labor practice claim had been considered. The Board responds by relying upon its new criteria for deferral as set forth in *Olin Corp., supra*, and its finding that the General Counsel did not affirmatively demonstrate that deferral was not warranted.

### 1. *Background of NLRB's Deferral Policy.*

The NLRB's responsibility to prevent and penalize unfair labor practices historically has been pitted against a countervailing desire to encourage the private settlement of labor disputes. The tension between these competing concerns is readily apparent from Congressional directives to the Board. Section 10(a) of the National Labor Relations Act provides that the Board's power to prevent unfair labor disputes "shall not be affected by any other means of adjustment or prevention that

has been or may be established by agreement, law, or otherwise." Section 203(d) of the Act, however, states that binding arbitration is "the desirable method of settlement of grievances arising over the application or interpretation of an existing collective bargaining agreement." 29 U.S.C. §§ 160(a), 173(d).

In the seminal case of *Spielberg Mfg. Co.*, 112 NLRB 1080 (1955), the Board ruled that "recognition" of an arbitration award was justified because (1) the proceedings appeared to have been fair and regular; (2) all parties had agreed to be bound; and (3) the decision of the arbitration panel was not clearly repugnant to the purposes and policies of the Act. 112 NLRB at 1802. It soon became apparent, however, that a more exacting standard was required to ensure that unfair labor practice issues were in fact being addressed and resolved. *See Raytheon Co.*, 140 NLRB 883, 886 (1963) (Board cannot neglect function of protecting rights of protected employees), *enforcement denied on other grounds*, 326 F.2d 471 (1st Cir.1964). *Raytheon Co.* added the further requirement that an unfair labor practice issue must have been "fully and fairly litigated" at the arbitration level to justify deferral by the Board. 140 NLRB at 887.[3] *See also Airco Industrial Gases*, 195 NLRB 676 (1972) (refusing to defer to arbitral award that did not indicate whether arbitrator had ruled on unfair labor practice issue); and *Yourga Trucking, Inc.*, 197 NLRB 928 (1972) (party asserting deferral defense bears burden of proving adequate presentation of unfair labor practice issue at arbitration).

The Board deviated from the *Spielberg* and *Raytheon* policy of cautious deferral in *Electronics Reproduction Service Corp.*, 213 NLRB 758 (1974), in which it ruled that arbitral findings would be given effect un-

---

**2.** The Board reversed the ALJ by a 2–1 vote. The dissenting member of the panel stated that deferral was improper where there was no written decision from which the ALJ could determine if deferral criteria had been met.

**3.** The *Raytheon* majority further rejected the minority argument that deferral was warranted

because the factual issue underlying the contractual and statutory issues was the same. 140 NLRB at 88–. *Raytheon* thus expressly rejected the theory that factual parallelism between contract and statutory issues would suffice for deferral to the arbitral decision. *Olin Corp., supra*, at 577–78 (Zimmerman, M., dissenting).

less "special circumstances" precluded the grievant from a "full and fair *opportunity*" to present evidence of an unfair labor practice. 213 NLRB at 764 (emphasis supplied). Although not expressly stated, this standard in effect placed upon the grievant the burden of proving to the Board that such unusual circumstances existed at the arbitration level. *See id.* at 765 (Fanning and Jenkins, dissenting).

The Board's new criteria established in *Electronic Reproduction* decision drew sharp disapproval from courts and critics.[4] In *Suburban Motor Freight*, 247 NLRB 146 (1980), the Board acknowledged criticisms that *Electronic Reproduction* represented an "unwarranted extension of the *Spielberg* doctrine and an impermissible delegation of the Board's exclusive jurisdiction under [the NLRA] to decide unfair labor practice issues." 247 NLRB at 146. The Board overruled *Electronic Reproduction*, even though its more liberal standard encouraged collective bargaining relationships, because it also "derogate[d] the equally important purpose of protecting employees in the exercise of their rights." *Id.* The *Suburban Motor Freight* panel explicitly ruled that it would "give no deference to an arbitration award which bears no indication that the arbitrator ruled on the statutory issue of discrimination in determining the propriety of an employer's disciplinary actions." *Id.* The Board also expressly restored the previous burden of proof allocations of *Spielberg* and *Yourga Trucking. See id.,* note 7.

The Board's return to the traditional deferral criteria did not solve the difficult questions that confront Board members and courts in an effort to reconcile the opposing policies of private dispute resolution and statutory rights protection. The Supreme Court has observed that "the opinions of the Courts of Appeal strongly suggest that there is marked disagreement on the circumstances under which the policy of Board deferral must be exercised." *Schaefer v. NLRB*, 464 U.S. 945, 945, 104 S.Ct. 362, 364, 78 L.Ed.2d 323, 325 (1983) (O'Connor, J., dissenting).

### 2. *Olin Corp.'s New Deferral Standard.*

The NLRB presumably attempted to address this need for uniformity in *Olin Corp.*, 268 NLRB 573 (1984), in which yet another approach to deferral was formulated. The Board cited infrequent deferral under *Suburban Motor Freight* as the primary reason for its new standard, concluding that *Olin Corp.* is more consistent with "the aims of the Act and American labor policy." 268 NLRB at 574. After expressly reaffirming the general *Spielberg* criteria, the *Olin* majority went on to state its new deferral standard:

> We would find that an arbitrator has adequately considered the unfair labor practice if (1) the contractual issue is factually parallel to the unfair labor practice issue, and (2) the arbitrator was presented generally with the facts relevant to resolving the unfair labor practice. In this respect, differences, if any, between the contractual and statutory standards of review should be weighed by the Board as part of its determination under the *Spielberg* standards of whether an award is "clearly repugnant" to the Act.
>
> ... And, with respect to the inquiry into [*Spielberg's*] "clearly repugnant" standard, ... unless the award is "palpably wrong," *i.e.*, unless the arbitrator's decision is not susceptible to an interpreta-

---

4. *See, e.g., Banyard v. NLRB*, 505 F.2d 342, 345–46 (D.C.Cir.1974) (absent congruence between contractual and statutory issues, board policy constituted not deferral but abdication). *See also Stephenson v. NLRB*, 550 F.2d 535, 550 (9th Cir.1977) (broader criteria described as "illogical" and an unjustified extension of deferral policy); Note, 88 Harv.L.Rev. 804 (1975); Schatzki, "Majority Rule, Exclusive Representation, and the Interests of Individual Workers: Should Exclusivity be Abolished?", 123 U.Penn. L.Rev. 897 (1975).

Some pre-*Suburban Motor Freight* Board decisions also indicated dissatisfaction with the *Electronic Reproduction* standard by using language consistent with the earlier deferral guidelines. *See, e.g., Max Factor & Co.,* 239 NLRB 804 (1978); *The Mason and Dixon Lines, Inc.,* 237 NLRB 6 (1978); *The Kansas City Star Co.,* 236 NLRB 866 (1978).

tion consistent with the Act, we will defer.

*Id.* (footnotes omitted). *Olin Corp.* also modified the *Raytheon* "fully and fairly litigated" test by returning to the *Electronic Reproduction* rule placing the burden upon the General Counsel to demonstrate that deferral was not necessary. *Id.*

Taylor urges, however, that the *Olin Corp.* standard confers upon arbitral decisions a nearly preclusive effect that is inappropriate in many contexts in which contractual and statutory labor disputes may arise. Taylor contends that factual parallelism does not always guarantee legal parallelism and sets forth several instances in which *Olin's* "factually parallel" test will result in inadequate or no litigation of the unfair labor practice issue.[5]

■ As evidenced by the application of the *Olin Corp.* standard to Taylor's labor claim, the Board's latest attempt to formulate a consistent deferral policy has swung back too far in the direction of *Electronic Reproduction* and cannot pass muster. As noted above, the NLRB has a statutory duty to enforce the National Labor Relations Act and exclusive jurisdiction to decide unfair labor practices. The Board may not avoid this responsibility through a far-reaching deferral policy which apparently presumes that an unfair labor practice claim has been resolved through arbitration.

■ The Supreme Court has stated in *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), that an employee whose grievance was dismissed at arbitration nevertheless could bring a Title VII claim arising from the same underlying facts. Recognizing that the arbitrator's competence lies in "the law of the shop, not the law of the land," the Court held that an employee may still assert statutory claims independent of any rights created by a collective bargaining agreement. 415 U.S. 36, 57, 94 S.Ct. 1011, 1024. Deferral to an arbitral finding is not justified when the arbitrator did not address or resolve a distinct statutory claim. *Id.*

Several Courts of Appeal have faced similar fact situations and ruled against deferral where the circumstances surrounding the arbitral process were unknown or unclear. In *NLRB v. Magnetics International, Inc.*, 699 F.2d 806, (6th Cir.1983), the arbitral award was accompanied by a brief discussion which gave no indication that an unfair labor practice charge was considered. The court upheld the refusal of the Board to defer to arbitration, refusing to speculate on what the arbitrator might have considered and holding that arbitration is "properly seen as an aid to the Board, not as an alternative to its processes." 699 F.2d at 809. In *NLRB v. General Warehouse Corp.*, 643 F.2d 965 (3d Cir.1981), the arbitrator stated in a written opinion that a grievant was dismissed for just cause and denied his grievance without discussing other possible motives for the grievant's discharge. Under these circumstances, the court overruled deferral by the Board because the arbitral finding did not encompass unfair labor practice issues. 643 F.2d at 969–70. Other cases have similarly refused to sanction

---

5. (1) The facts relevant to establishing a contract violation may differ from those facts relevant to unfair labor practice violations, although there may be some overlap. Example: An arbitrator's finding of just cause for an employee's termination may overlook a real underlying reason for discharge arising from some protected activity.

(2) The standard of review for a contract violation may differ from a Board for an analogous unfair labor practice claim. Example: The amount of allowable insubordination by an employee differs for Board and arbitral purposes.

(3) The interest of the union may be to establish a favorable interpretation of a contract, not to protect an employee from a specific unfair labor practice. Example: A group of cases may be resolved jointly on a compromise basis, despite the wishes of one grievant to proceed with an unfair labor practice complaint.

(4) A bipartite grievance committee issues a decision denying a grievance but giving no indication of whether, and if so what, evidence or issues were considered in reaching that decision. Example: The majority of Teamster grievance committee decisions do not include written explanations, as demonstrated in the decision to deny Taylor's grievance.

deferral because the record did not indicate clearly that the statutory issue in fact had been presented to or decided by the arbitrator.[6] *See, e.g., Stephenson v. NLRB,* 550 F.2d 535, 540–41 (9th Cir.1977); *Banyard v. NLRB,* 505 F.2d 342, 345 (D.C.Cir.1974).

In a closely analogous context, courts have grappled with similar concerns in applying standards for granting preclusive effect to an arbitral finding. In *Barrentine v. Arkansas-Best Freight System, Inc.,* 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981), the Supreme Court rejected the contention that arbitration of wage claims precluded a later suit under the Fair Labor Standards Act based on the same underlying facts. 450 U.S. at 745–46, 101 S.Ct. at 1447–48. In *McDonald v. City of West Branch,* 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984), the Court similarly held that an earlier arbitral finding did not preclude a civil rights action brought under 42 U.S.C. § 1983. The *McDonald* Court held that its limitation of deferral in *Alexander* and preclusion in *Barrentine* was "based in large part on our conclusion that Congress intended the statutes at issue in those cases to be judicially enforceable and that arbitration could not provide an adequate substitute for judicial proceedings in adjudicating claims under those statutes." 466 U.S. at 289, 104 S.Ct. at 1803, 80 L.Ed.2d at 308. This concern for individual rights has been expressed in refusals by other courts to give preclusive effect to arbitration in a later statutory action.[7]

The Fifth Circuit has recognized the importance of maintaining a viable forum for the resolution of statutory rights as stated by the Supreme Court in *Alexander, Barrentine,* and *McDonald.* In *McNair v. United States Postal Service,* 768 F.2d 730 (5th Cir.1985), a case which ultimately upheld preclusion for an arbitral finding, the court first reviewed the principles of deferral and preclusion. *McNair* recognized the need for employees to be able to assert statutory rights independent of the arbitration process, citing four factors to support this conclusion.

(1) an arbitrator, schooled primarily in the law of the shop, may lack the expertise to resolve complex statutory questions; (2) "because an arbitrator's authority derives solely from the contract, an arbitrator may not have the authority to enforce" statutes; (3) the union, which generally controls the grievance process, because its interests are not necessarily identical to those of its employees, may not adequately protect their statutory rights; and (4) "arbitral factfinding generally is not equivalent to judicial factfinding.,"

768 F.2d at 736, note 7 (citing *McDonald v. City of West Branch, supra* ).

Relying on the principles and interests stated in the above cases, it is apparent that the *Olin Corp.* standard—like its predecessor in *Electronic Reproduction* —does not protect sufficiently an employee's rights granted by the National Labor Relations Act. By presuming, until proven otherwise, that all arbitration proceedings confront and decide every possible unfair labor practice issue, *Olin Corp.*

---

**6.** The full and fair litigation test was also followed in *NLRB v. Wolff & Munier, Inc.,* 747 F.2d 156 (3d Cir.1984), in which the court remanded to the Board after deferral because the ALJ's opinion did not indicate the precise reason that it deferred to the arbitral finding. The court recognized that failure to consider the statutory issue would justify the ALJ's deferral. 747 F.2d at 161 n. 14.

Other cases that have enforced deferral have done so only after a demonstration that the arbitrator fully considered and clearly decided the statutory issue. *See, e.g., Bakery, Confectionery and Tobacco Workers v. NLRB,* 730 F.2d 812, 815–16 (D.C.Cir.1984) (using *Olin* language yet continuing to require a thorough considera-

tion of such issues by the arbitrator); *NLRB v. Motor Convoy, Inc.,* 673 F.2d 734, 735 (4th Cir. 1982) (unfair labor practice issue held identical to contractual issue); *Hammermill Paper Co. v. NLRB,* 658 F.2d 155, 160–61 (3d Cir.1981) (rationale for deferral evaporates when only contractual issue has been treated by arbitrator), *cert. denied* 460 U.S. 1080, 103 S.Ct. 1767, 76 L.Ed.2d 341 (1983).

**7.** *See, e.g., Burke v. Latrobe Steel Co.,* 775 F.2d 88, 91 (3d Cir.1985) (ERISA claims not barred); *Consolidation Coal Co. v. Marshall,* 663 F.2d 1211, 1219 (3d Cir.1981) (Federal Coal Mine Health and Safety Act of 1969 raised independent statutory issues.

gives away too much of the Board's responsibility under the NLRA. The ALJ in this case was presented with two grievance committee proceedings. In his supplemental decision, the ALJ found that the statutory issue clearly was considered at the Multi-State Committee hearing. If that hearing had produced a dispositive result, then deferral to that result would have been proper under any of the many variations of the *Spielberg* standard. It is the Area Committee's decision, however, that is relevant for deferral purposes and the ALJ had no indication from the transcript of that proceeding whether the Area Committee considered any unfair labor practice claim.

This case does not present the court with the question of whether the facts and issues were sufficiently parallel to justify deferral, nor does it involve scrutinizing an arbitral finding for a result that is "clearly repugnant" to the Act. The overriding question in this case is whether the Area Committee ever considered any facts relevant to Taylor's statutory claim.

Under *Olin Corp.*, the Board essentially has decided that deferral is proper in all cases unless it is affirmatively demonstrated that some unusual circumstances require that the ALJ conduct an independent inquiry into a grievant's statutory claims. Such a result cannot be reconciled with the need to protect statutory rights, as expressed by the Supreme Court in *Alexander, Barrentine*, and *McDonald, supra. Olin Corp.* either overlooks or ignores those instances where contract and statutory issues may be factually parallel but involve distinct elements of proof and questions of factual relevance.

The new standard further ignores the practical reality of many bipartite proceedings, in which individual rights may be negotiated away in the interest of the collective good. The circumstances surrounding bipartite proceedings such as Taylor's Area Committee hearing hardly inspire confidence in the fairness of the process or the accuracy of the result. A recent survey of Teamster Grievance Committees casts doubt on the competence of union representatives, thoroughness of investigation, adequacy of preparation, and reliability of evidence.[8] *See generally* Summers, *The Teamster Grievance Committees: Grievance Disposal Without Adjudication,* 37 Proc. of the Nat'l Acad. of Arb. 130 (1984); *Olin Corp.*'s standard appears on its face to represent an abdication of Board responsibility, and application of that standard to proceedings such as these fully supports this conclusion. *Spielberg*'s first requirement—that the proceedings below appear to have been fair and regular—can hardly be satisfied in this context. The Supreme Court has recognized that arbitration is valuable therapy for the complicated and troubled area of labor dispute resolution. *See Carey v. Westinghouse Corp.*, 375 U.S. 261, 272, 84 S.Ct. 401, 409, 11 L.Ed.2d 320 (1964). There can be little therapeutic value, however, in a deferral policy so unmindful of the Board's statutory responsibility and of individual rights.

We therefore VACATE the Board's order deferring to the decision of the Area Grievance Committee, and REMAND the case for further consideration of Ryder's exceptions and the General Counsel's cross-exceptions to the decision of the ALJ.

---

**8.** This survey observes that employees have no say in determining who will represent them, committee hearings last an average of fifteen minutes, most evidence presented is secondhand or hearsay, there is little cross-examination, and hearings are held at locations far from employees, who often do not receive time off from work to attend. The author concludes that "the number of cases, the pressures of time, the unavailability of evidence, and the speed with which cases are disposed makes it impossible for the panel in many cases to hear all the relevant facts, or even to make a considered judgment on the basis of limited facts and arguments presented at the hearing. This, in turn, creates a climate and practice of inadequate preparation, summary presentation, incomplete inquiry, and decisions based on a partial skeleton or imaginary shadow of the facts." *Id.* at 138.