**Elizabeth MAHON, Terry Rendon, Florence O'Day, Norma Meyers, Carole Mitchum, Richard Hutson, Linda Parrette and Josie Malendez, Petitioners,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent,**

**and**

**Alpha Beta Company, Intervenor.**

No. 85–7565.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 15, 1986.

Decided Jan. 26, 1987.

As Amended on Denial of Rehearing Feb. 23, 1987.

---

Garry, McTernan, Stender & Walsh, Francis J. McTernan, San Francisco, Cal., for petitioners.

N.L.R.B., Pat Wynns, Washington, D.C., for respondent.

McLaughlin & Irvin, Henry F. Telfeian, San Francisco, Cal., for intervenor Alpha Beta Co.

Before GOODWIN, HUG and WIGGINS, Circuit Judges.

GOODWIN, Circuit Judge:

Eight members of Local 428, Retail Clerks Union challenge the National Labor Relations Board's deferral to a prearbitration settlement agreement in dismissing their unfair labor practices claims for back pay following reinstatement after disciplinary discharges. We affirm.

A number of factual questions were decided by the administrative law judge, but this petition turns on the narrow legal question whether the Board's deferral to the settlement agreement is repugnant to the policy of the National Labor Relations Act to protect statutory rights. This is the second time this court has considered questions related to the same basic dispute which arose out of disciplinary discharges following refusals to work during sporadic picketing by Teamsters' locals in the summer of 1978. For factual background, *see Alpha Beta Co. v. Retail Store Employees Union Local 428*, 671 F.2d 1247 (9th Cir. 1982).

Without rehearsing the controverted evidence heard by the administrative law judge, it is sufficient to note that roughly 20 retail store employees, members of two

local unions, received disciplinary leaves or layoffs. They had either failed to report for work, or had left work after being informed, correctly or otherwise, that pickets had appeared at their stores. The administrative law judge resolved factual disputes about the actual presence of pickets, about the approval or disapproval of the Teamster picketing by the Retail Clerks Union, about the validity of the "no-strike" clause of that bargaining agreement, and about the application of the clause to the "sympathy strike" by the individual workers. These and other issues had all been settled earlier in a written settlement agreement reached after negotiations by a board of adjustment which had been convened under the terms of a collective bargaining agreement.

■ The administrative law judge gave consideration to the settlement agreement, but decided on the authority of earlier NLRB cases that the settlement agreement did not fully protect the statutory rights of the aggrieved workers. The right of employees to engage in a sympathy strike is a protected right under § 7 of the Act, 29 U.S.C. § 157 (1982). *International Brotherhood of Electrical Workers, Local 387 v. NLRB*, 788 F.2d 1412, 1414 (9th Cir.1986). The administrative law judge determined that the disciplinary actions taken by management were in violation of § 8(a)(1) and 8(a)(3) of the Act, 29 U.S.C. §§ 158(a)(1) and (3) (1982). It is not necessary for us to comment upon the correctness of the administrative law judge's assessment of the employer conduct as an unfair labor practice, and we decline to do so.

The Board, in reviewing the decision of the administrative law judge, concluded that the employees, at least through their representatives at the meetings of the adjustment board, had consented to the settlement. The settlement agreement provided for reinstatement of some employees but expressly excluded back pay. The testimony before the administrative law judge

on the consent question supports the Board's view that if the employees had mental reservations about their back pay claims, such reservations were not communicated to the management parties. On its face, the settlement document recites that it was agreed to by the local unions, management and the concerned employees. It is also undisputed that the union—the employees' representative—agreed to the settlement.

In any event, after the settlement was reached, the employees proceeded as charging parties before the NLRB with the individual back pay claims they had filed. They prevailed at the administrative law judge level but lost before the Board. The matter pending before us now, therefore, arises because of the divergence between the administrative law judge's interpretation of the settlement agreement and that of the Board. The issue boils down to the single question whether the Board abused its discretion by overruling the administrative law judge and deciding to defer to the settlement agreement. We have no warrant to second guess the Board unless it abused its discretion. *Servair, Inc. v. NLRB*, 726 F.2d 1435, 1438–39 (9th Cir.1984). *Douglas Aircraft Co. v. NLRB*, 609 F.2d 352, 354 (9th Cir.1979).

The NLRB's standards for deferral to a pre-complaint settlement are set out in *Airport Parking Management v. NLRB*, 720 F.2d 610, 614–617 (9th Cir.1983). In *Airport Parking*, we held that the NLRB did not abuse its discretion in refusing to defer to a strike settlement. We noted that the settlement contained no discussion of the unfair labor practice issue. The settlement did not waive unfair labor practice complaints, made no mention of back pay, and did not consider questions of fault. The union filed new unfair labor practice charges three days after executing the settlement. We agreed with the finding that " 'the union, and presumably the employees, did not understand that the agreement was intended to extinguish all claims arising out of the strike.' " *Airport Parking,*

720 F.2d at 617 (quoting the ALJ's decision).

The Board in the pending case found that the union and the employees had agreed in the settlement to extinguish all claims. The Board stated that the settlement was made under the grievance procedure of the relevant bargaining agreement; that the grievance proceedings were fair and regular; that all parties, including the employees, had agreed to be bound; and that the terms of the settlement were not clearly repugnant to the labor protective policy of the Act.

The administrative law judge had found as a fact that the discharged employees had consented to the settlement, but that they had done so with a mental reservation that they could still seek to recover all lost wages in NLRB proceedings. These reservations may or may not have been encouraged by NLRB personnel. The record is not clear whether union advisors told the workers they could consent to the settlement and also recover back pay. All but four of the original grievances had resulted in restoration of employment, but in the petitioners' cases, without back pay. The administrative law judge, believing that deferral to the settlement agreement would be inconsistent with the Act, allowed back pay and other relief on the authority of *Roadway Express, Inc.*, 246 NLRB 174 (1979), *enforcement denied sub nom. Roadway Express, Inc. v. NLRB*, 647 F.2d 415 (4th Cir.1981) and *American Cyanamid Company*, 239 NLRB 440 (1978). The Board, in rejecting the administrative law judge's decision, held that deferral to the settlement was not repugnant to the Act, citing *Olin Corp.*, 268 NLRB 573 (1984), and *Metropolitan Edison Co. v. NLRB*, 460 U.S. 693, 103 S.Ct. 1467, 75 L.Ed.2d 387 (1983).

The question of deferral to settlement and arbitration has been a rich source of litigation in this circuit, as well as in others. *See e.g., Servair*, 726 F.2d 1435, and cases discussed therein. Petitioners urge us to follow the logic of the Eleventh Circuit in its recent decision, *Taylor v. NLRB*, 786 F.2d 1516 (11th Cir.1986), rejecting the Board's reliance on the *Olin Corp.* standards for deferral to arbitration awards. We decline to do so. *Taylor* and the cases upon which it relies, like most of the cases cited to this court, arise out of challenges to Board decisions to defer, or not to defer, to arbitration awards. In contrast, the case at bar involves not an arbitration award but a Board deferral to a settlement. Settlement agreements, while similar to arbitration awards in certain respects, are nonetheless distinctive. They can contain elements of waiver not necessarily incorporated in a submission to arbitration. Indeed, while consent to a settlement follows an examination of its terms, consent to arbitration precedes the award. We have held that such consent does not ensure submission to the terms of an arbitration award. *Servair, supra.* Because this is a settlement deferral, and not an arbitration deferral, we need not decide what deferral authority the Board could have exercised had the case continued to arbitration and resulted in a similar award. We need not decide, therefore, at this time whether we would follow *Taylor* in a *Taylor*-type case in this circuit.

■ It is instructive to note that it has long been recognized that a union may waive a member's statutorily protected rights, including the right to strike and the right to refuse to cross a picket line. *Metropolitan Edison Co. v. NLRB*, 460 U.S. 693, 705, 103 S.Ct. 1467, 1475, 75 L.Ed.2d 387 (1983). In the case at bar, the Board concluded that the union had the authority to negotiate the settlement reached even though it gave up back pay for some workers while obtaining reemployment of others who might have had dubious claims to be reinstated. Relying on *Metropolitan Edison*, the Board noted that had it felt it necessary to do so, the union could even have waived the employees' statutory rights. We agree with the Board that the union was empowered to conclusively bind the employees to the terms of the settlement agreement. Wholly apart from their own separate consents, therefore, we hold that the petitioners are bound by the terms of the settlement agreement.

■ Petitioners claim entitlement to a species of estoppel in this case because the

Board allegedly changed its standards of deferral during the pendency of their case. They claim that they agreed to the settlement relying upon a belief that the law would not foreclose a separate action for back pay by individuals claiming § 8(a)(1) and (3) violations. The record is far from clear that each individual claimant agreed to the settlement knowing that he or she was giving up a claim to back pay. The record is also unclear, however, that the individual claimants had any right to rely on advice, good or bad, from their local business agents or from the person who answered the telephone at the local office of the National Labor Relations Board. The administrative law judge apparently viewed the matter one way and the Board viewed it the other way.

The argument for estoppel is unpersuasive. It is true that on occasion the Board has refused to defer to settlement agreements and we have affirmed that refusal. *See, e.g., Airport Parking,* 720 F.2d 610. However, settlements vary and they are based on discrete and distinctive sets of facts. The simple truism that the agreements in *Airport Parking* and similar cases inevitably involved facts and circumstances different from the one made by the Retail Clerks Union in the case at bar invalidates the estoppel argument.

 Our holding in this case is not meant to suggest that this court will approve any arbitrary change in the Board's guidelines for deferring to private agreements. We stated as much in *Airport Parking,* 720 F.2d at 615, and reaffirm it here. If the change catches the affected parties off base and defeats their justifiable expectations it will not survive judicial review. We expect the Board to follow its own clearly articulated standards or explain why it chose not to. However, it is not the business of the courts to place the Board in a strait jacket so that it must move in lock step without regard to the special facts of each case. Ultimately, the question in any single case is whether the Board abused its discretion in developing and applying its standards for deferral. We think it has not in this action.

Petitioners also contend that the Board's dismissal of their back pay claims is repugnant not only to their statutory rights, but to the law of the case as established in our earlier decision *sub nom. Alpha Beta Co. v. Retail Store Employees Union Local 428,* 671 F.2d 1247. The most charitable comment that can be made about the latter argument is that it is not inspired by a careful reading of the decision. We said nothing in *Alpha Beta* about the Board's duty to defer to a settlement. The case merely held that management could not force pending § 8 charges to arbitration when the grievances out of which the charges arose had been settled, leaving nothing under the contract to arbitrate. When the case was here before, neither the administrative law judge nor the Board had considered the effect, if any, to be given the settlement in processing the § 8 charges.

Upon the facts of the case as presented to the Board, we are not persuaded that the Board abused its discretion in deferring to the settlement, even though, had it been reviewing an arbitration award it might not have deferred to an award reaching similar results.

Petition denied.