**ROADWAY EXPRESS, INC.,**
**Petitioner-Appellant,**

v.

**William E. BROCK, Secretary of**
**Labor, Respondent-Appellee.**

**No. 86–8771.**

United States Court of Appeals,
Eleventh Circuit.

Oct. 20, 1987.

See also, D.C., 624 F.Supp. 197.

Michael C. Towers, Fisher & Phillips, John B. Gamble, Jr., Atlanta, Ga., for plaintiff-appellant.

Joseph M. Woodward, U.S. Dept. of Labor, Office of the Sol., Barbara A.W. McConnell, Sandra Lord, Washington, D.C., for respondent-appellee.

L.N.D. Wells, Jr., Mullinax, Wells, Baab & Cloutman, Dallas, Tex., for amicus curiae.

Before RONEY, Chief Judge, ANDERSON and EDMONDSON, Circuit Judges.

EDMONDSON, Circuit Judge:

This retaliatory discharge case involves 49 U.S.C.A. sec. 2305—the so-called "whistleblower protection" provision of the Surface Transportation Assistance Act (STAA). The controversy arose when petitioner Roadway Express, Inc. (Roadway) fired Jerry W. Hufstetler, a line-haul and road driver for Roadway; according to Roadway Hufstetler was discharged because he had acted dishonestly. Although respondent, Secretary of Labor William Brock (the Secretary), abused his discretion by refusing to examine the earlier arbitration decision rendered pursuant to the terms of the collective bargaining agreement, we conclude that Roadway was not prejudiced. We affirm the Secretary's conclusion that Roadway fired Hufstetler for retaliatory purposes in violation of 49 U.S.C.A. sec. 2305.

Hufstetler had a long record at Roadway of both "safety breakdowns"[1] and whistleblowing activity. Roadway officials suspected that some of Hufstetler's safety breakdowns were intentionally created as a means for Hufstetler to earn overtime in addition to his regular wages. In trucking vernacular, Hufstetler was suspected of being a "breakdown artist." Roadway's belief that Hufstetler was a breakdown artist was common knowledge within Roadway, and within the union to which Hufstetler belonged. Moreover, Roadway's view was also known by Hufstetler.

Admittedly on the lookout for breakdowns occurring on trucks driven by Hufstetler, one of Roadway's terminal relay managers fired Hufstetler on November 22, 1983 after receiving a telephone report from another terminal manager regarding a suspicious Hufstetler safety breakdown that had occurred earlier that day.[2]

Hufstetler filed a grievance with the union; his grievance was arbitrated pursuant to the applicable collective bargaining agreement. The Southern Conference Area Committee denied the grievance and upheld the validity of the discharge.[3] Hufstetler then filed a complaint with the Secretary in which he alleged he was discharged in violation of the STAA. A Department of Labor administrative law judge (ALJ) held a hearing and issued a recommended decision and order that Roadway had violated the STAA by firing Hufstetler for his whistleblower activities. The Secretary eventually adopted the ALJ's finding that Roadway violated the STAA when it terminated Hufstetler. This appeal ensued.

The ALJ who heard Hufstetler's case refused to admit into evidence the transcript of Hufstetler's arbitration proceedings because the ALJ had concluded that the union's business manager, who acted as Hufstetler's advocate before the arbitration committee, was so incompetent that the arbitration proceedings had to have been inadequate to protect Hufstetler's statutory rights.[4] The arbitration thus merited no consideration, in the ALJ's view. The Secretary affirmed this decision, also refusing even to consider the

1. A "safety breakdown" occurs when a truck is rendered inactive because it is in violation of safety regulations. Truckdrivers were paid for waiting while the truck is repaired.

2. The breakdown involved nonfunctioning "marker" lights. An independent, or "vendor," mechanic who was called to the scene to repair the lights found that the lights were not operative because they had been unplugged. The vendor mechanic surmised that the marker lights had been intentionally unplugged.

3. The first arbitration hearing was before the Southern Multistate Grievance Committee, which deadlocked on the case. The case then progressed to the Southern Conference Area

Grievance Committee, which denied the grievance.

4. Specifically, the ALJ concluded that the union's business manager was unable to understand "rather basic questions." The ALJ also pointed to conflicts in witnesses' statements taken by the business manager and noted that the role of business agent of the union "would not necessarily be consonant with the role of a discharged employee." The Secretary concluded that all of these points were "valid bases for concluding that Hufstetler was improperly represented."

arbitration transcripts.[5] The issue we decide today is whether the Secretary may—on the grounds of incompetent advocacy—reject out of hand an otherwise proper arbitration decision without first examining those proceedings.[6]

■ We believe that the strong federal policies favoring arbitration generally, *see Shearson/American Express, Inc. v. McMahon,* — U.S. ——, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), and arbitration agreements arrived at through collective bargaining agreement procedures specifically, *see Barrentine v. Arkansas-Best Freight System, Inc.,* 450 U.S. 728, 734–36, 101 S.Ct. 1437, 1441–42, 67 L.Ed.2d 641 (1981), require us to disapprove the Secretary's actions here. It is wrong for courts to assert such a strong, pro-arbitration policy and then to allow the Secretary to ignore arbitral proceedings without even examining the proceedings in question. At the same time, "we adopt no standards as to the weight to be accorded an arbitral decision, since this must be determined in the court's [or, here, the Secretary's,] discretion with regard to the facts and circumstances of each case." *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 60 n. 21, 94 S.Ct. 1011, 1025 n. 21, 39 L.Ed.2d 147 (1974) (quoted in *Barrentine,* 450 U.S. at 743 n. 22, 101 S.Ct. 1446 n. 22).

As the *Barrentine* Court explained in some detail, the quality and function of arbitration proceedings vary widely on a case-by-case basis. *See Barrentine,* 450 U.S. at 740–46, 101 S.Ct. at 1444–47. Whether those proceedings were adequate to protect an employees' statutory rights—and thus were worthy of weight—necessarily also varies on a case-by-case basis. Refusing to admit arbitration proceedings into evidence and rejecting an arbitration decision without first examining the proceeding itself improperly impinges the strong federal policy favoring use of arbitral resolution procedures arrived at by collective bargaining.[7]

Viewed in this light, we must conclude that the Secretary lacked discretion to refuse even to consider the arbitration proceeding. Despite this conclusion, we nevertheless affirm the Secretary's decision because Roadway was not prejudiced by the Secretary's action.

■ We have examined the arbitration transcripts at issue as well as the transcript of the hearing held before the ALJ.

---

**5.** The Secretary noted that the "better procedure" for the ALJ to follow "might" have been to admit the transcripts and then determine what weight, if any, the transcripts were due.

**6.** Roadway also contends (a) that the Secretary applied the wrong legal standards when determining that Hufstetler was fired pretextually and (b) that the Secretary's conclusions are not supported by substantial evidence. The Secretary has adopted the burdens of proof and burdens of production set forth by the Supreme Court in similar wrongful discharge cases. *See Nix v. Nehi-RC Bottling Co.,* 84–STA–1 (1984) (relying on *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)); *Dartey v. Zack Co.,* 82–ERA–2 (1982) (relying on *Burdine, supra,* and *Mt. Healthy City School District Bd. of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). The Secretary correctly articulated and applied those burdens. Moreover, substantial evidence, *see Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), supported the Secretary's findings that Roadway acted with pretextual, retaliatory motive. A review of the record also convinces us that the Secretary did not engage in the kind of uniformly one-sided pattern of findings that in-

dicates lack of impartiality. *See generally International UAW v. NLRB,* 802 F.2d 969, 975 (7th Cir.1986); *NLRB v. Miami Coca-Cola Bottling Co.,* 222 F.2d 341, 345 (5th Cir.1955).

**7.** We are aware that this circuit recently expressed strong reservations about whether the Teamsters grievance arbitration procedures are sufficient to protect an employee's rights. *See Taylor v. NLRB,* 786 F.2d 1516, 1522 (11th Cir. 1986). The reasoning in *Taylor* nevertheless supports rather than undercuts the position we establish today. The *Taylor* court rejected the NLRB's deferral standard articulated in *Olin Corp.,* 268 NLRB 573 (1984) as excessively deferential to arbitration decisions and instead adopted a case-by-case evaluation. *Taylor,* 786 F.2d at 1521–22. Just as the NLRB may not abdicate its responsibility under the NLRA by automatically deferring to an arbitration decision, *id.,* so too the Secretary may not emasculate the policy favoring arbitration by doing just the opposite: refusing even to consider the particular proceeding. "Where an arbitral determination gives full consideration to an employee's [statutory] rights, a court [or here, the Secretary] may properly accord it great weight." *Gardner-Denver,* 415 U.S. at 60 n. 21, 94 S.Ct. at 1025 n. 21.

It is apparent to us that the arbitration procedures did not give full consideration to Hufstetler's rights. Thus, Roadway was not prejudiced by the Secretary's refusal to consider the proceedings because those proceedings in fact were unworthy of weight. This is in accord with this court's general observations regarding Teamster grievance committee arbitration hearings. *See Taylor v. NLRB*, 786 F.2d 1516, 1522 (11th Cir.1986) ("The circumstances surrounding proceedings such as Taylor's Area Committee hearing hardly inspire confidence in the fairness of the process or the accuracy of the result. A recent survey of Teamster Grievance Committees casts doubt on the competence of union representatives, thoroughness of investigation, and reliability of evidence.")[8] We recognize the difficulties inherent in providing fairly rapid and informal yet also accurate and cost-efficient arbitration. Nonetheless, if a court—or the Secretary—is to exercise its discretion and defer to arbitral actions, the arbitral proceeding must be sufficient to inspire confidence in its fairness and regularity. *See generally id.* at 1518 (discussing the *Spielberg Mfg. Co.*, 112 NLRB 1080 (1955) deferral standards), 1522.

In summary, when the parties in cases such as these have submitted to arbitration pursuant to the collective bargaining agreement and the employee files a subsequent complaint with the Secretary, the Secretary should admit the arbitration into evidence, review the proceedings and then decide what weight the arbitration proceedings merit. Given the particular facts of this case and this arbitration proceeding, however, we conclude that the arbitration decision was due no deference. Accordingly, no remand is required.

AFFIRMED.

---

**8.** We emphasize that we do not condemn all Teamster grievance proceedings as improper or unfair; in fact, we stress that each proceeding must be evaluated on its own merits and neither summarily rejected nor deferred to. *See Taylor, supra.*